### DETERMINED IN THE

# THIRD DEPARTMENT

#### AT

# GENERAL TERM,

## May, 1893.

---

EBENEZER HOLMES, Appellant, *v.* GILBERT E. JONES, Treasurer of THE NEW YORK TIMES, Respondent.

*Damages for libel — excessive verdict.*

The verdict of a jury, in an action brought to recover the damages resulting from a libelous publication, will not be set aside as excessive unless the amount is so great as to manifestly show that the jury must have been actuated by passion, partiality, prejudice or corruption

The fact, that on a former appeal, the General Term reduced a verdict recovered in an action for libel and ordered that the verdict should be set aside and a new trial be granted, unless the plaintiff stipulated to take judgment for the reduced amount, is not binding upon the jury upon a new trial, and does not necessitate the setting aside as excessive of a verdict rendered on the new trial which is larger in amount than the sum indicated by the appellate court on the former appeal.

On the trial of an action brought to recover damages for a libelous article published in a New York city daily paper, charging the plaintiff, who was an undertaker, with being intoxicated while engaged in the business of preparing for and conducting the funeral services of General Grant at Mount McGregor, the plaintiff recovered a verdict for $3,500.

*Held,* that, under the circumstances of the case, the amount of the verdict was not so great as to show that the jury must have been actuated by passion, partiality, prejudice or corruption ; and that the verdict should not be interfered with, on appeal, as excessive.

APPEAL by the plaintiff, Ebenezer Holmes, from an order made at the Saratoga Circuit upon a motion made by the defendant upon the minutes of the trial judge, and entered in the office of the clerk of Saratoga county on the 26th day of April, 1892, setting aside

a verdict and granting a new trial on the ground of excessive damages, unless the plaintiff should stipulate to reduce the verdict and recovery to the sum of $2,000.

*C. S. & C. C. Lester* and *Matthew Hale*, for the appellant.

*Townsend, Dyett & Einstein* and *Henry Yonge*, for the respondent.

MAYHAM, P. J.:

This is an appeal from an order setting aside a verdict of a jury, rendered at the Saratoga Circuit, for $3,500, and granting a new trial on the ground of excessive damages, unless the plaintiff stipulate to reduce the verdict and recovery to the sum of $2,000.

The action was for an alleged libel published in the New York *Times*, charging the plaintiff as an undertaker with being intoxicated while engaged in the business of preparing for and conducting the funeral services of the late General Ulysses S. Grant, at Mount McGregor, in Saratoga county.

The complaint sets out some portion of the alleged libelous charge as printed in the *Times*, and claimed damages in the sum of $25,000.

The answer set out at great length circumstances and facts alleged to have occurred at and before the alleged funeral services; admits the publication of the following words: "It has been stated that Mr. Holmes was not in a fit condition to perform his professional duties for a part of the time during which he claims he was rendering service. The night that I arrived at Mount McGregor, Mr. Holmes was under the influence of liquor at the hotel. His condition was patent to all who saw him."

"That the defendant alleges that the words last quoted are true. That on the night of July 23, 1885, the plaintiff was constantly drinking spirituous liquors, mixing his drinks, drinking at one time lager beer, at another rye whiskey, then brandy, and so on until he became very drunk. He became abusive and foul-mouthed; he was staggering and hiccoughing; when he sat down he would spread all over the seat and let his head droop upon his arms placed to support it; he would mutter incoherently to himself; one Dr. McEwan, a friend of the plaintiff, tried to coax him to go to bed, but he would

not go, and the said Dr. McEwan and others who were with him, finally went to bed and left the plaintiff on the hotel piazza. In the morning following the plaintiff came from his room in the hotel displaying evidence of having slept with all his clothes on during the night; his clothes were dirty and rumpled, his necktie had worked up under his ear, and his shoes were open."

Other admissions of the charges contained in the complaint are set out in the answer, as are also alleged correspondence between the plaintiff and a member of General Grant's family, and also correspondence between the plaintiff and the New York *Sun.*

In the sixteenth paragraph of the defendant's answer, the defendant admits that the New York *Times* on the 22d of November, 1886, contained the following words: "He was there at 6 in the evening, and Mr. Holmes had nothing to do with it. Mr. Holmes was drunk at the hotel and was going to and coming from the bar all the time. This was before the body was placed in the casket. Anxiety was felt lest he should insist upon going to the cottage and create an unseemly scandal there by his condition and appearance."

"That this defendant denies that these words are false, scandalous or defamatory, or that they were published maliciously of, or concerning the plaintiff. That this defendant denies that the said association, the New York *Times*, meant, or was understood to mean, that the plaintiff was, on the evening of July 23, 1885, while he claimed to be taking care of, embalming and preparing for burial the remains of the late General Ulysses S. Grant, in fact at the hotel at Mount McGregor, and drunk and drinking all the time and so drunk that anxiety was felt lest he should go to the cottage where the body of General Grant was lying and create scandal by his intoxicated condition and drunken appearance.

"That the defendant alleges that the words quoted as last aforesaid are true. That the plaintiff was, at the time when he claimed to be taking care of, embalming and preparing for burial the remains of the late Gen. Ulysses S. Grant, drunk at the hotel at Mount McGregor from drinking spirituous liquors. That there were many visitors at the cottage, where the body of the late General Grant was lying, and in the hotel at Mount McGregor, and great anxiety was felt by those who had charge of the said body that the plaintiff would go to said cottage, as he threatened to do, and by his drunken

condition, appearance and conduct, would produce and create an unseemly scandal."

The twenty-ninth paragraph of the defendant's answer contains the following language : " That on the night of July 23, 1885, the plaintiff was drunk from drinking spirituous liquors ; that during the evening he was continually going to and coming from the bar of the bar-room of the hotel at Mount McGregor, engaged in taking drinks of spirituous liquors, and he was continually mixing his drinks, drinking at one time lager beer, and at another whiskey, then brandy, and so on until he became very drunk ; that he became abusive and foul-mouthed from his drunken condition, staggered and hiccoughed ; when he sat down he would spread himself all over the seat and let his head droop on his arms placed to support it, and would mutter incoherently to himself ; that one Dr. McEwan, a friend of the plaintiff, tried to coax him to go to bed, but he would not go, and the said Dr. McEwan and others who were with him finally went to bed and left him on the hotel piazza ; that on the following morning he came from his room in the hotel displaying evidence of having slept with all his clothes on during the night; that his clothes were dirty and rumpled, and that his necktie had worked itself up under his ear, and his shoes were open ; that from his being so intoxicated and for other reasons he was not, on the night of July 23, 1885, and for sometime subsequently, in a fit condition to perform professional or any other duties; that at a time when the plaintiff claimed to be taking care of and embalming and preparing for burial the body of the late General Grant, he was drunk at the hotel at Mount McGregor from spirituous liquors ; that there were many visitors at the cottage, where the body of the late General Grant was lying, and in the hotel at Mount McGregor, and great anxiety was felt by those who had charge of the body that the plaintiff would go to said cottage, as he threatened to do, and by his drunken condition, appearance and conduct, would produce and create an unseemly scandal."

On the trial the plaintiff read in evidence from a copy of the New York *Times* of November 22, 1886, the following portions of the article set up in the complaint : 

" It has been stated that Mr. Holmes was not in a fit condition to perform professional duties for a part of the time during which he

claims he was rendering service. The night that I arrived at Mount McGregor, Mr. Holmes was under the influence of liquor at the hotel; his condition was patent to all who saw him.

" He was there at six in the evening and Mr. Holmes had nothing to do with it. While he was there, Mr. Holmes was drunk at the hotel that evening and was going to and from the bar all the time. This was before the body was placed in the casket. Anxiety was felt lest he should insist upon going to the cottage and create an unseemly scandal there by his condition and appearance."

The plaintiff also offered evidence on the trial that tended to disprove the charge of drunkenness set out in the alleged libel and substantially reiterated in the defendant's answer.

The defendant also introduced evidence tending to prove the truth of the alleged libel. The jury rendered a verdict in favor of the plaintiff for $3,500, which the defendant moved to set aside as excessive, and from the order granting that motion, unless the plaintiff would stipulate to reduce the recovery to $2,000, the plaintiff appeals.

The only ground upon which this verdict was set aside is that of excessive damages.

The trial court, by allowing the verdict to stand at a reduced sum, disposes of the issues raised by the pleadings in favor of the plaintiff and leaves no chance on this motion for any speculation as to the actionable character of the alleged libelous publication. The complaint charges that the defendant falsely, wickedly and maliciously published in such newspaper of and concerning the plaintiff the false, scandalous and malicious libel set out in the complaint, and the jury have, by their verdict, sustained the allegations of the complaint, and the court at Special Term has, by allowing the verdict to stand, if reduced in amount, acquiesced in the conclusion reached by the jury as to the publication of the libel.

An action for damages for a tort is, therefore, clearly maintained and stands conceded upon the record, and the alleged wrongdoer is before the court, asking that the damages which the jury have assessed against it for the perpetration of the wrong be reduced.

This court has recently considered the question of the propriety of the court interfering with the verdict of a jury in actions of tort. In *Stephens* v. *Hudson Valley Knitting Mills* (48 N. Y. St. Repr.

815), HERRICK, J., in discussing this question says : " In actions for damages for torts it is well-established law in this State that verdicts of jurors will not be set aside for excessiveness unless the amount is so great as manifestly to show that the jury must have been actuated by passion, partiality, prejudice or corruption."

The judge cites in support of his conclusion a series of decisions in this State from *Coleman* v. *Southwick* (9 Johns. 45) to *Porter* v. *Dunn* (131 N. Y. 193).

Within these decisions the only question open for our examination and decision is whether the verdict in this case was so great in amount as to show that the jury must have been actuated by passion, partiality, prejudice or corruption.

In the examination of that question we may consider that the jury, in disposing of the case, might properly take into consideration the business and situation of the plaintiff, the character of the libelous publication, and the extent to which it was circulated, the motive which the jury from the evidence might find for its publication and the character of the answer which the defendant interposed as defense or in mitigation of damages.

The evidence discloses that this libel was published at the great metropolis of the nation, hundreds of miles from the place where the events chronicled are alleged to have occurred, in a newspaper of almost world-wide circulation.

That they concerned the conduct of the plaintiff, while engaged in a laudable, professional or mechanical pursuit, involving great delicacy and circumspection, and connected with the funeral obsequies of a man of world-wide fame, whose death had produced a profound sensation throughout the entire country, and the incidents of whose funeral were read and discussed all through the State and Nation with lively interest.

The charge was of a seriously damaging character, not only as it related to the business of the plaintiff, but also as it reflected upon him personally, and was well calculated to affect him in a business point of view, and also socially as a man, and to bring him into disgrace and disrepute by all who read and believed the article. It could only be completely justified by alleging and proving its truth. This the defendant undertook to do, but in the estimation of the jury failed in that atttempt. The defendant also assumed to allege facts

and circumstances in support of the charge in mitigation of damages. That is also allowable by way of mitigation, or reduction of damages. But in setting up these defenses the defendant took the responsibility of establishing their truth, and also of satisfying the jury that these defenses were interposed in good faith, and not for the purpose of reiterating in a more offensive manner the same libelous accusations, and if the proof of justification failed, and the jury had reason to believe that the matters set up in mitigation were not proved, and were interposed with the design of repeating the libel, they could in such case regard such reiteration as evidence of malice, and take such fact into consideration in aggravation of damage. Under such circumstances, statements and allegations in the answer were proper subjects for comment of counsel for the plaintiff on the trial, and cannot be withheld from the consideration of the jury. In *Holmes* v. *Jones* (121 N. Y. 466), EARL, J., in discussing the use and effect of pleadings on the trial, says : " There is no rule of law which requires a party in any action to put his adversary's pleadings in evidence before his counsel can be allowed to comment upon them in his address to the jury. Statements, admissions and allegations in pleadings are always in evidence for all the purposes of the trial of the action. They are made for the purpose of the trial and are before the court and jury, and may be used for the legitimate purpose."

If the jury in this case reached the conclusion that this alleged libel was not justified, as they must have done before finding a verdict for the plaintiff, then they were at liberty to look into the proof and all the facts and circumstances proved or set out in the pleadings of the defendant, to determine whether the libel published and proved or the allegations in the answer were malicious and in bad faith, and, taking all into account, determine whether to allow compensatory or punitive damages.

In *Holmes* v. *Jones* (*supra*), the court say : " So far as the libel was not justified, it was for the jury to determine the amount of the damages to be awarded therefor. If they came to the conclusion, from the circumstances and nature of the charge made, that the publication was malicious, in bad faith, or recklessly, carelessly or wantonly made, they could go beyond compensation and award punitive damages."

But it is urged that on a former trial of this case, which resulted in a verdict of $5,000 in favor of the plaintiff, the General Term of this court reduced the verdict to $2,000, and ordered that, unless the plaintiff stipulated to take judgment for that amount, the verdict should be set aside and a new trial granted.

We have not that record before us, but cannot assume that the General Term intended by that order authoritatively to declare that $2,000 was the maximum amount for which a verdict could be rendered in this case.

In that case, the suggestion of the General Term was not accepted by the defendant, and we do not see how it can now be urged by the defendant as binding upon the court or parties in this trial. No such rule seems to have obtained in this court. In *Peck* v. *H. R. R. R. Co.* (8 Hun, 286), the plaintiff on the first trial recovered a verdict of $5,000, which was set aside as excessive. The case was tried again and the plaintiff recovered $4,000. The defendant insisted, on appeal to the General Term, that this verdict was excessive, but the court said, Judge BOCKES writing the opinion, in which Judge LEARNED and Judge BOARDMAN concurred:

" The former verdict was $5,000. This sum was deemed quite extravagant and palpably unjust, in view of the case made on the evidence. The verdict on the retrial was for $4,000. The case is quite similar on the proof to that before considered by the court, and the reduction in the sum now awarded by the jury seems much less than it should have been in view of the remarks then made by the court. But even supposing the amount now awarded is deemed by the court large, is it within the province and duty of the court to grant another new trial on this ground ? A second jury has considered the case under admonition from the court, and has made some deduction from the sum before awarded."

" The subject of damages is for the jury, and must be at all times in their discretion and judgment. The court can only interfere on this point when it is apparent that the jury were improperly influenced, or must have acted from passion, partiality or corruption. The authority to grant new trials on the ground of excessive damages is undoubted, but its exercise by the courts has been about equally capricious, as has been the verdicts of juries. * * * It

must be admitted, I think, that the verdict of $4,000 in this case is large, in view of the injury here proved; but this sum having been awarded by a second jury, the case having been sent back for reconsideration on that point, and nothing appearing except the amount on which to predicate partiality, corruption or improper influence, I think the court must accept it as final and conclusive." (8 Hun, 288–289.)

In the case at bar we see no reason for reducing the verdict rendered by the jury.

While every privilege which is consistent with the due protection of private character should be accorded the public newspaper press, to the end that the freedom of the press guaranteed by the Constitution should not be abridged, still no invidious discrimination should be allowed in its favor, calculated to license its use to sensational and slanderous assaults upon the citizen. The interests of the public and the press are best subserved when the publishers of newspapers are held to truthful utterances, especially when the character of a citizen — public or private — is under discussion.

Under all the circumstances of this case disclosed by the evidence, we see no element of passion, prejudice or corruption evinced by the amount of this verdict; nor do we regard it, in view of all the facts, excessive.

The order of the Special Term should be reversed.

HERRICK, J., concurred; PUTNAM, J., not acting.

Order reversed, with ten dollars costs and printing disbursements.