## Díaz *v.* The San Juan Light and Transit Co.

### Appeal from the District Court of San Juan.

No. 531.—Decided January 20, 1911.

Appeal—Contradictory Evidence—Appreciation of the Lower Court.—In cases of contradictory evidence the appreciation thereof made by the lower court should be accepted by the appellate court as just and proper, unless it be shown that in making such appreciation said court was moved by passion, prejudice, or partiality, or that it committed manifest error, circumstances not demonstrated in this case, and which, instead of resulting from the evidence, it appears, on the contrary, that the latter was duly weighed.

Action, Civil and Penal.—Under the present procedure penal and civil actions *ex delicto* are entirely independent and can never be prosecuted conjointly. It devolves upon the *fiscal* to prosecute the penal action, the civil one being reserved to the party interested, to be exercised at the proper trial.

Damage—Actions Arising From Quasi-Criminal or Criminal Fault or Negligence.—The provisions of section 1803 of the Revised Civil Code have a wider and more liberal range of application than they had in the previous code, and may serve as a basis for the exercise of civil actions arising from *quasi-criminal* fault and negligence, as also for the exercise of such actions as may arise from criminal fault and negligence.

Id.—Meaning of the Word Damage.—By damage is understood, for the purposes of section 1803 of the Revised Civil Code, the injury caused by one person to another, or to his property, whether done with the intention of causing damage or by reason of negligence or carelessness, or through unavoidable accident.

Id.—The word *damage* involves in its signification such indemnity as may be recoverable or demanded by one who, as a result of the act or fault of a third person, has sustained an injury in his person or property, or in such rights as he may possess, arising from his relations to other persons.

Id.—Matters Which Should Be Alleged and Proved—Damage Sustained by the Plaintiff and Absence of Negligence on His Part—Negligence of the Defendant—Amount of Indemnity.—To be entitled to indemnity for damages, based on the provisions of section 1803 of the Revised Civil Code, it is necessary for the plaintiff to allége and prove:

(a) The existence of a real and positive damage, causing him losses in his person, in his property, or in his right as derived from his relations to other persons;

(b) That such damage is the immediate and natural consequence of the guilty act or negligence of the defendant and not of the fault or negligence of the plaintiff; and

(c) That the plaintiff must specify in his complaint, with the greatest clearness possible, the kind of losses sustained by him and determine in detail his compensation thereof; and when from the nature of the case the losses are not susceptible of liquidation, it being impossible to reduce them to dollars and cents, because of their reference to physical pain, loss of work, confinement in a hospital, mental sufferings, etc., a sum considered as a just compensation should then be fixed.

Id.—Powers of the Lower Court to Fix the Indemnity.—The lower court is the one called upon to weigh the allegations and evidence and to fix the amount of indemnity to be paid by the defendant, bearing in mind, however, that such indemnity does not imply a punishment, but an obligation to compensate with a just sum the damages and losses caused to the plaintiff through his fault or negligence.

Id.—Powers of the Appellate Court—Excessive or Extremely Inadequate Indemnity.—The appellate court has power to reduce the amount of the indemnity allowed by the lower court, but it should not exercise such power unless said indemnity be excessive or immoderately inadequate.

The facts are stated in the opinion.

*Mr. Henry F. Hord* for appellant.

*Mr. Enrique Márquez Huertas* for respondent.

Mr. Justice del Toro delivered the opinion of the court.

Alejandro Díaz brought a suit against the San Juan Light

and Transit Company to recover the sum of $6,000 for damages, alleging as cause of action the following facts:

"1. That the aforesaid defendants constitute a corporation organized in the United States of America and doing business in Porto Rico under the protection of our laws governing corporations, with its principal office in San Juan, the agent or manager thereof being F. W. Teele.

"2. That said defendants are operating between San Juan and Río Piedras, P. R., a daily public service of trolley cars, having a certain number of stops along the line, said stops being marked and numbered according to time table.

"3. That in the afternoon of Monday, the 5th of October last, the plaintiff, having paid his fare to the respective conductor, was traveling in the direction of Santurce in one of the cars assigned to the passenger service by said defendant corporation, and upon arriving at the crossing near Stop 7, where the plaintiff had to get off for the purpose of visiting his family, or rather a daughter who lives at that place, the car in which the plaintiff was traveling stopped, and when the plaintiff, with due care, was about to descend the steps of the car for the purpose of reaching the street, the car, obeying the sudden impulse given it by the motorman, proceeded rapidly on its way without affording the plaintiff time to get off, he being hurled out of the car with such violence, through the inexcusable carelessness and negligence of the motorman in starting before time, that the plaintiff fell a short distance from the car, receiving several injuries and bruises, among which are the following:

"An injury on the chin at the inferior and anterior part of the jaw, affecting the bone and the nerve, causing him great pain in the bone and a serious trismus, or lockjaw, which for several days prevented mastication, the wound received being of such a character as to upset his system noticeably.

"Other injuries in both legs, at the shin bone, resulting in ulcers from which he is still suffering, and which impede his walking and working.

"Several bruises on the breast and arms, and as a consequence of the contusion on the head he is seriously suffering from an intense aching of the cerebrum, which at times causes him to lose all notion or consciousness of everything, and in addition to this his hearing is now affected and, to some extent, his eyesight, it being impossible for him to attend to his interests owing to such physical disability.

"And these injuries inflicted upon his person, as hereinbefore described, the plaintiff values, moderately, at $5,000.

"4. That the plaintiff's farm is in Vega Redonda, municipality of Comerío, P. R., where he resides with his wife and six children of very tender age, and owing to these injuries to his person received through the carelessness of the aforesaid motorman, his family has been suffering from lack of pecuniary resources and from the separation of the plaintiff, who is naturally distressed at the thought of the misery his family is experiencing—moral sufferings which further aggravate those caused by his physical injuries—for all of which the plaintiff fixes the small sum of $1,000."

The defendant alleged that the complaint did not state facts sufficient to constitute a cause of action, and after hearing both parties the court dismissed the plea to the action and allowed the defendant three days in which to answer the complaint.

The answer is as follows:

"The defendant, represented by its attorney, Henry F. Hord, answers the complaint brought against it, and denies the facts stated under paragraphs 1, 2, 3, and 4 of the complaint, as therein alleged.

"As special defense the defendant alleges that if the plaintiff received any injuries it was through his own fault and negligence, and that the defendant was not guilty of any fault or negligence with respect to the plaintiff, and that the latter's fault and negligence were the immediate cause of his receiving said injuries, if he has received any.

"The defendant therefore prays that the complaint be dismissed, with costs against the plaintiff."

The hearing of the case was had on February 18, 1910. Both parties presented their allegations, produced their evidence, and orally argued, through their counsel, in support of their respective contentions. And the District Court of San Juan, on the same day, rendered judgment declaring that the facts and the law were in favor of the plaintiff and against the defendant, and ordering and decreeing that the former should obtain from the latter the sum of $2,000 as damages, and such costs and expenses as might be verified.

An appeal having been taken from said judgment to this Supreme Court, the defendant and appellant, San Juan Light and Transit Co., alleged, as grounds of the appeal, the following:

"1. That from the facts proven it appeared that the plaintiff received the injuries of which he complains through his own fault and negligence, and not through the fault and negligence of the defendant or its agents.

"2. That even in case the defendant were under obligation to repair the damage done the plaintiff, the latter has not proven that he has spent a single cent or sustained 1 cent of material damages on account of the injuries received by him.

"3. That the court, in adjudging that the defendant should pay the plaintiff $2,000 damages, has deviated from the principle of law determining the only obligation which in such case could devolve upon the defendant, namely, the obligation of *repairing the damage done,* and not that of remunerating the plaintiff with a sum which was neither the object of evidence nor is based upon any legal ground." (Civil Code, section 1803.)

With respect to the first of said grounds we have to say that the evidence produced was contradictory and, as is to be inferred from the judgment appealed, the district court has considered it as proving that the injuries sustained by the plaintiff resulted from the negligence of the defendant and not from his own fault or negligence.

This being so, and it not having been shown that the trial court was actuated by passion, prejudice, or partiality, or that it had committed manifest error, we must accept its conclusion as the just and proper one, in accordance with our decision in numerous cases, the more so as we have carefully examined said evidence, and weighing it by the result of our examination, we have reached the same conclusion.

The other two grounds of the appeal we shall consider together, for they really constitute but one issue, namely, that inasmuch as the plaintiff has failed to produce any evidence of the amount of damage sustained, judgment should not be rendered in his favor.

The appellant cites in support of its contention the provision of section 1803 of the Revised Civil Code, and the jurisprudence established by the Supreme Court of Spain in its judgments of November 9, 1886, April 7, 1890, November 26, 1895, March 7, 1896, July 3, 1897, and September 30, 1898.

Section 1803 of the Revised Civil Code reads:

"A person who by an act or omission causes damage to another when there is fault or negligence shall be obliged to repair the damage so done."

The principle of law recognized in said section is not new. In Roman law, that of Aquilius provided that whoever caused a damage through his fault or imprudence was obliged to repair the same, the degree of this responsibility being specified in numerous cases and circumstances. Said doctrine was embodied almost wholly into the laws of Title V, *Partida* VII, which constituted the positive civil law of Spain up to the promulgation of the Civil Code. In articles 18, 19, 20, and 21 of the Spanish Penal Code, the civil responsibility is determined as a consequence of the penal responsibilty. (12 Manresa, "Com. al C. C.," 598.)

The Spanish Civil Code to which we have alluded and which was made effective in Porto Rico by Royal Decree of July 31, 1889, reproduced the general sense of the old law, although by adopting the precepts thereof to modern theories it imposed the obligations derived from fault or negligence, not only upon the one causing the damage, but sometimes upon a third person who should answer for the former, being bound to him by ties which renders the latter liable for his acts. Article 1902 of said Code is exactly the same as section 1803 of the Revised Civil Code.

The jurisprudence established by the Supreme Court of Spain upon this matter might be briefly stated thus: That in order to give rise to the obligation imposed in article 1902 of the Civil Code, the coincidence of two distinct requisites

is necessary, viz: (1) That there exist an injury or damage not originating in acts or omissions of the prejudiced person himself, and its existence be duly proven by the person demanding indemnification therefor; (2) that said injury or damage be caused by the fault or negligence of a person other than the sufferer. (12 Manresa, "Com. al C. C.," 604.)

With regard to the appreciation by the court of the amount of damages, we shall cite one of the judgments of the Supreme Court of Spain which establishes a distinct precedent for the doctrine sustained by us in this opinion. Eulogio Santa María died in Madrid in 1891, in consequence of a fall from the wall of the racket known as "Jai-Alai," which he was climbing for the purpose of placing the customary flags to announce the opening of the game. The facts were investigated through criminal proceedings which were discontinued, and then the widow of the deceased, in her own behalf and on behalf of her infant daughter, Teodora, instituted a civil action in the proper court, alleging that "the cause of the fatal accident resided in the fault and omission of the owners of the racket, because, as they knew and saw, neither the place for the raising of the flags nor the road that had to be gone over to reach it were in a condition to insure safety"; that at his death her husband had left two children, one named Anastasio, of 14 years, had by his first marriage, and another named Teodora, of 3 years, had by his second marriage with the plaintiff; that the damages caused and for which the defendants should be held responsible were of a twofold character—that is, one having reference to affection and the other to the loss of the modest pay which, capitalized at 5 per cent and added to the sum demandable for the first-mentioned consideration, amounted to 21,425 *pesetas.* The defendants alleged that the death of the plaintiff's husband could not be ascribed to any fault, omission, or negligence on their part, etc., and prayed that the complaint be dismissed. After hearing the case the court rendered

judgment condemning the defendants to pay the sum of 5,000 *pesetas to the heirs of the deceased* as indemnification for the latter's death.  An appeal from said judgment having been taken by the plaintiff, the defendants joined in said appeal, and the *"Audiencia territorial,"* in deciding the case, adjudged the defendants to pay *the plaintiff in her own right and as representative of her daughter, Teodora,* 5,000 *pesetas,* as indemnification for the death of her husband, affirming, *in these terms,* the judgment appealed from, and .reserving to the other. child of the deceased, who was not a party in this case, his right likewise to demand indemnification.  The defendants then took an appeal for annulment of judgment to the Supreme Court, alleging that various laws had been violated and, among other particulars, that the judgment did not state the amount at which the court valued the life of Santa María, nor was anything allowed the plaintiffs on the score of affection or for damages, nor was the principle mentioned upon which the court had acted to fix the sum of 5,000 *pesetas.*

The Supreme Court of Spain affirmed the judgment appealed from in its opinion of December 14, 1894, the grounds whereof are the following:

. "As to the ground the court had for concluding, in view of the evidence, that the death of the unfortunate Eulogio Santa María was due to the omission on the part of the appellants, owners, and managers of the racket (ball game) known as 'Jai-Alai,' of such precautions as were called for to forestall the dangers attending the placing and removal of the streamers, which the deceased had been doing with their knowledge and consent, and for their benefit, we find that said court has correctly applied articles 1093, 1902, and 1903, and that it has not violated articles 1101, 1103, and 1104 of the Civil Code, because, according to the first-mentioned article, obligations arising from acts or omissions, in which faults or negligence, not punished by law, occur, are subject to the provisions of said articles 1902 and 1903, and, according to the latter, indemnification for the damage done lies whenever the act or omission has been the cause of the damage and all the diligence of a good father of a family has not been observed, either

when the act or omission is personal with the party, or when it has reference to persons for whom he should be responsible; and because the provisions of articles 1101, 1103, and 1104 are of a general character and applicable to all kinds of obligations and do not come in conflict with the special provisions of articles 1902 and 1903;

"The indemnification corresponding to the damage caused by a guilty act or omission, not constituting a crime, should be declared, as are all indemnifications, in every suit, in accordance with the particular damage caused to the claimants, and as in the judgment this has been done with respect to Juana Alonzo Celada and her daughter, the only plaintiffs, by fixing the sum due them, said judgment does not violate article 1902 of the code, and much less does it violate article 360 of the Law of Civil Procedure;

"The amount of the indemnification adjudged is based on the evidence taken and on the facts admitted by both parties in their pleadings at the trial, wherefore there has been no violation of article 1214, through lack of proof, as alleged."

Such were the laws and jurisprudence in force in Porto Rico up to the year 1902, when the Civil and Penal Codes and the Law of Criminal Procedure decreed by the Spanish monarchy were repealed.

In said year the Revised Civil Code, the Penal Code, and the Code of Criminal Procedure came into effect, the latter containing all necessary provisions relating to crimes and their penalties, and the manner of prosecuting and punishing them, but omitting everything having reference to the exercise of civil actions resulting from criminal acts.

"In the present condition of the law penal and civil actions resulting from a crime are entirely independent and can never be brought together. The *fiscal* only can institute a criminal action, and the exercise of the corresponding civil action is reserved to the party interested." (*Zalduondo* v. *Sánchez*, decided April 20, 1909.)

Although section 1803 of the Revised Civil Code is the same as article 1902 of the Spanish Civil Code, by reason of the political change brought about in the Island and the establishment of the new penal system, the provisions thereof had and still have a wider range of application and afford a

basis for the exercise of civil actions arising from *quasi-criminal* fault and negligence, and the exercise of actions resulting from criminal fault and negligence.

The Spanish word "daño" was translated by the English word "damage," and its signification should be fixed by construing the same in harmony with the fundamental change brought about in our institutions, the more so as said signification is not contrary to that established by the former jurisprudence, but is more ample and liberal, more just and equitable.

Both the English "damage" and the Spanish "daño" are words derived from the Latin *damnum*, "the loss caused by one person to another, or to his property, either with the design of injuring him or with negligence and carelessness, or by inevitable accident." (1 Bouvier's Law Dictionary, 491.)

Let us see now what must be alleged and proven in cases of this kind.

"In personal and mixed actions (but not in penal actions, for obvious reasons) the declaration must allege, in conclusion, that the injury is to the damage of the plaintiff and must specify the amount of damages;" Com. Dig. *Pleader* (C. 84); 10 Co. 116 *b*.

\*          \*          \*          \*          \*          \*          \*

"To constitute a right to recover damages, the party claiming damages must have sustained a loss; the party against whom they are claimed must be chargeable with a wrong; the loss must be the natural and proximate consequence of the wrong.

"There is no right to damages, properly so called, where there is no *loss*. A sum in which a wrongdoer is mulcted simply as punishment for his wrong, and irrespective of any loss caused thereby, is a 'fine' or a 'penalty' rather than damages. Damages are based on the idea of a loss to be compensated, a damage to be made good; 11° Johns., 136; 2 Tex., 460; 11 Pick., 527; 15 Ohio, 726; 3 Sumn., 192; 4 Mass., 115; 91 Pa., 302; 104 Mass., 353; 16 Q. B. D., 613. (See 142 N. Y., 391; Hale, Dam., 3.) This loss, however, need not always be distinct and definite, capable of exact description, or of measurement in dollars and cents. A sufficient loss to sustain an action may appear from the mere nature of the case itself. The law

in many cases presumes a loss where a wilful wrong is proved; and thus also damages are awarded for injured feelings, bodily pain, grief of mind, injury to reputation, and for other sufferings which it would be impossible to make subjects of exact proof and computation in respect to the amount of the loss sustained; 2 Day, 259; 3 H. & M'H., 510; 5 Ired., 545; 2 Humphr., 140; 15 Conn., 267; 8 B. Monr., 432; 94 Mich., 119; 112 N. C., 323; 39 Ill. App., 495; 82 Tex., 33. The rule is not that a loss must be proved by evidence, but that one must appear, either by evidence or by presumption, founded on the nature of the case." (1 Bouvier's Law Dic., 492.)

This same Supreme Court, in the aforesaid case of *Zalduondo* v. *Sánchez,* expressed itself through Mr. Justice Wolf in the following terms:

"The court below, from the testimony, might have inferred that complainant was unconscious for 5 days; that he was in bed ill for some 20 or 25 days; that he bore deep wounds, the scars of which were still to be seen at the time of the trial (for they were examined by Dr. Goenaga); that the complainant suffers from buzzing in his ears, from a loss of memory, and other symptoms, and is threatened with some form of insanity. How far and how long or at what times the complainant might be affected in his work or in his life as a result of the appellant's acts it is impossible to foretell. It cannot be precisely determined, but it may be fixed by the trial court within reason. No mention is made in the testimony of the mental suffering that the complainant might have undergone, which is likewise a recognized element of damages in all suits of this nature. The Supreme Court of the United States has so recognized it in the case of *McIntyre* v. *Giblin,* 131 U. S., CLXXIV.

"Without deciding the question of whether punitive damages are recoverable, we think that the trial court did not overestimate the reasonable and probable actual damages sustained by the complainant when it fixed them at $1,000, and the judgment of the trial court must be affirmed."

Applying the foregoing principles and those contained in section 1804 of the Revised Civil Code to the specific case under consideration, we find that in the complaint it is alleged that the complainant sustained damages which he estimates at $6,000, and that the immediate and natural cause of said damages was the careless act of one of the employes of the

defendant, who was in its service and while in the discharge of his duties.

The evidence taken does not show that the complainant failed to earn, as a result of the injuries received, a stated sum of money, or that he had to pay the physician who attended him another stated sum, etc.; but it does show that the complainant, a man of 51 years of age, who worked as a farmer and hawked about his products, supporting himself and his family with his labor, while stepping out of one of the electric cars of the defendant, at Stop 7½ of the San Juan-Río Piedras line, fell to the ground owing to the carelessness and inattention of the motorman in starting the car before it was time; that he received a severe blow which rendered him unconscious for some moments, fractured his lower jaw, and caused abrasions on his legs and other parts of his body; that he remained at the hospital, having his injuries nursed, for more or less one month, and that, on being examined at the trial—that is, one year and five months after his fall—he presented on the right side of his face, as a consequence of the fracture, "a contraction which means a paralysis," and could "speak, but hardly masticate, and only with difficulty could open and close his month." It does not appear from the evidence that the complainant has been disabled, but it does appear that at the time the evidence was taken he was suffering from nervous illness, according to the opinion of Dr. Stahl, one of the experts who testified at the trial.

Under these circumstances the judge, in accordance with the law and jurisprudence, had to estimate for himself the damage caused and determine the amount of indemnification which the defendant should pay the complainant. And in so doing the court did not commit the errors attributed to it by the appellant.

The question in the present case is not one of punitive or exemplary damages, but of compensation for damages sustained. In order to allow such compensation it is not

necessary that the complainant should prove his loss in terms of dollars and cents, it being sufficient, in cases of this nature, to prove that the plaintiff, through the fault or negligence of the defendant and not through his own fault and negligence, had sustained a real damage, consisting of physical pains, loss of work, confinement in a hospital, mental suffering, etc.

The indemnification in this case was fixed by the lower court at $2,000, and although it could perhaps have been calculated at less, we do not find that it is immoderately inadequate, and this being so we should not alter it.

"Even in that large class of cases in which there is no fixed measure of damages, but they are left to the discretion of the jury, the court has a certain power to review the verdict and to set it aside if the damages awarded are grossly excessive or unreasonably inadequate. The rule is, however, that a verdict will not be set aside for excessive damages unless the amount is so large as to satisfy the court that the jury have been misled by passion, prejudice, ignorance, or partiality; Field, Dam., 683; 19 Barb., 461; 9 Cush., 228; 16 B. Monr., 577; 22 Conn., 74; 27 Miss., 68; 10 Ga., 37; 6 Rich., 419; 1 Cal., 33, 363; 11 Gratt., 697; 2 Misc. Rep., 303; 69 Hun., 346; 52 Fed. Rep., 87; 74 Ind., 520; 8 id., 165; 76 N. Y., 594; 85 Tenn., 400." (1 Bouvier's Law Dic., 494.)

Summarizing the principles involved in this case, we shall say that in order to recover damages based upon the provisions of section 1803 of the Revised Civil Code it is necessary:

(a) That the complainant should allege and prove the existence of a real and positive damage which has caused him losses in his person, in his property, or in his rights as derived from his relations to other persons:

(b) That he should allege and prove that such damage is the immediate and natural consequence of the guilty or negligent act of the defendant; and

(c) That the complainant should specify in his complaint, with all the clearness possible, the kind of losses sustained by him and determine in detail his compensation therefor;

and when from the nature of the case the losses cannot be detailed in dollars and cents, a sum should be fixed that may be considered a just compensation.

And furthermore:

1. The court is the one called upon to weigh the allegations and evidence and to fix the amount of indemnity to be paid by the defendant, bearing in mind, however, that such indemnity does not imply a punishment, but the obligation to compensate, with a just sum, the damages and losses caused to the plaintiff through his fault or negligence.

2. That this Supreme Court has power to reduce the amount of the indemnity allowed by the lower court, but it shall not exercise such power unless said indemnity be excessive or immoderately inadequate.

The appeal should be dismissed and the judgment appeal from, affirmed.

*Affirmed.*

Justices MacLeary and Wolf concurred.

Mr. Chief Justice Hernández did not sit at the hearing of this case.