Díaz *v.* The San Juan Light & Transit Co.

Apelación procedente de la Corte de Distrito de San Juan.

No. 531.—Resuelto en enero 20, 1911.

Apelación—Prueba Contradictoria—Apreciación de la Corte Inferior.—En los casos de prueba contradictoria, la apreciación que de la misma hubiere hecho la corte inferior, debe aceptarse por el tribunal de apelación como justa y procedente, a no ser que se demuestre que al hacer tal apreciación aquella corte actuó movida por pasión, prejuicio o parcialidad, o que incurrió en manifiesto error, circunstancias que no se han demostrado en este caso y que, lejos de resultar de la prueba, aparece, por el contrario, que ésta fué debidamente apreciada.

Acción—Civil—Penal.—Bajo el actual sistema procesal, las acciones penal y civil *ex delicto*, son completamente independientes y nunca pueden ejercitarse conjuntamente.    Compete al Fiscal el ejercicio de la acción penal, mientras que el de la civil queda reservado a la parte interesada, en el juicio que proceda.

Daño—Acciones Derivadas de Culpa y Negligencia Cuasi Delictivas y Delictivas.—Las disposiciones del artículo 1803 del Código Civil Revisado tienen un campo de aplicación más amplio y liberal que el que tenían en el Código anterior, y pueden servir de base para el ejercicio de las acciones civiles derivadas de culpa y negligencia cuasi delictivas, así como para el ejercicio de aquellas que se originen de culpa y negligencia delictivas.

Id.—Significación de la Palabra Daño.—Se entiende por daño, á los efectos del artículo 1803 del Código Civil Revisado, el perjuicio causado por una persona a otra, o a su propiedad, bien sea con el propósito de ocasionarle daño, ya por motivo de negligencia o descuido, o por accidente inevitable.

Id.—El concepto de la palabra "daño" envuelve la indemnización recobrable, o reclamada, por uno que, por virtud del acto o falta de un tercero, ha sufrido un perjuicio en su persona o en su propiedad, o en aquellos derechos que tuviera, derivados de sus relaciones con otras personas.

Id.—Extremos que Deben ser Alegados y Probados—Daño Sufrido' por el Demandante y Falta de Negligencia por su Parte—Negligencia del Demandado—Importe de la Indemnización.—Para tener derecho a indemnización por daños y perjuicios, basándose en las disposiciones del artículo 1803 del Código Civil Revisado, es necesario que se alegue y pruebe por el demandante:

(*a*) La existencia de un daño real y positivo, que le ha ocasionado pérdidas en su persona, en sus bienes, o en sus derechos derivados de sus relaciones con otras personas.

(*b*) Que se alegue y' pruebe que tal daño es la consecuencia inmediata y natural del acto culpable o negligente del demandado y no de la propia culpa o negligencia del demandante; y

(*c*) Que el demandante especifique en su demanda, con la mayor claridad que sea posible, en qué consisten las pérdidas por él sufridas y fije detalladamente su compensación, y cuando por la naturaleza del caso las pérdidas no sean susceptibles de liquidación, no pudiendo fijarse en pesos y 'centavos, por tratarse de dolores físicos, pérdida de trabajo, reclusión en un hospital, sufrimientos mentales, etc., deberá entonces fijarse la cantidad que se estime como justa compensación.

Id.—Facultades de la Corte Inferior para Fijar la Indemnización.—La corte inferior es la llamada a apreciar las alegaciones y las pruebas y a fijar el montante de la indemnización que deba satisfacer el demandado; pero teniendo en cuenta que tal indemnización. no implica un castigo, sino obligación de compensar con una suma justa, los daños y perjuicios que por su culpa o negligencia irrogaran al demandante.

Id.—Facultades del Tribunal de Apelación—Indemnización Excesiva o Inmoderadamente Inadecuada.—El tribunal de apelación tiene facultades para reducir o aumentar el montante de la indemnización concedida por la corte inferior, pero no las ejercitará a menos que dicha indemnización fuere excesiva o inmoderadamente inadecuada.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Henry F. Hord.*

Abogado del apelado: *Sr. Enrique Márquez Huertas.*

El Juez Asociado, Sr. del Toro, emitió la opinión del tribunal.

Alejandro Díaz, presentó una demanda contra la San Juan Light and Transit Co., reclamando la suma de seis mil dollars en concepto de daños y perjuicios y alegando como causa de acción, los siguientes hechos:

"Primero. Que dichos demandados son una corporación organizada en los Estados Unidos de América y que trabaja en Puerto Rico al amparo de nuestras leyes sobre corporaciones, teniendo su oficina principal en San Juan, siendo su agente o administrador F. W. Teele.

"Segundo. Que dichos demandados tienen establecido entre San Juan, P. R. y Río Piedras, un servicio público diario de trenes o tranvías, con determinado número de paradas en el trayecto indicado, estando señaladas y numeradas tales paradas según su itinerario.

"Tercero. Que el lunes 5 de octubre último por la tarde, el demandante habiendo pagado la cuota de tarifa correspondiente al conductor respectivo, viajaba en dirección a Santurce en uno de los carros o wagones destinados al servicio de pasajeros por dicha corporación demandada y al llegar al sitio denominado el cruce en que hacen parada los carros de la demandada, cerca de la parada 7 en que tenía el demandante que bajar para llegar al término de su viaje, a visitar su familia o sea una hija que vive por aquel lugar, el carro en que iba el demandante hizo parada y cuando el demandante con el debido cuidado iba a apear el escalón del coche o carro para salir a la calle, el carro a impulso dado a la máquina por el motorista, siguió rápidamente viaje, sin dar tiempo a dicho demandante a acabar de bajar, siendo éste lanzado del coche con tal impulso, dado así al coche a causa del descuido y negligencia inexcusable de tal motorista, yendo a parar así el demandante con la caída a poco distancia del coche, recibiendo al caer varias lesiones, y entre ellas las siguientes:

"Una herida contusa en el medio de la barba en la parte inferior y anterior de la mandíbula, interesando el hueso y el nervio, produciéndole gran dolor en el hueso y fuerte trismo que le impidió durante varios días la masticación y fué de tal índole el golpe recibido y de tal forma, que todo su sistema se ha resentido notablemente.

"Otras heridas contusas en ambas piernas, en la tibia, habiéndosele formado, como consecuencia de ellas, úlceras, de las cuales aún está padeciendo, las que lo imposibilitan de andar y trabajar.

"Varias contusiones en el pecho y brazos, y como resultado de la lesión en la cabeza, está padeciendo de bastante gravedad, de fuerte dolor en el cerebro, perdiendo a veces la noción de todo o el conocimiento, así como también padece ahora del oído y algo de la vista, no siéndole posible atender a sus intereses bajo ese estado de imposibilidad física.

"Y estos perjuicios así sufridos en su persona los estima el demandante módicamente en $5,000.

"Cuarto. Que el demandante tiene su finca en Vega Redonda, jurisdicción de Comerío, P. R., en donde vive con su esposa y seis hijos de muy pequeña edad, y debido a estos daños recibidos en su persona, o por causa del referido accidente ocurrídole a causa del descuido del motorista indicado, ha estado tal familia privada de toda suerte de

recursos pecuniarios pasando días de infelicidad con la separación del demandante y con la escasez de tales recursos para su subsistencia, sufriendo a la vez tal demandante, al saber o pensar en la miseria por-que en esa época estaba atravesando tal familia, sufrimientos morales que agravaban aún más el estado de sus padecimientos físicos, por cuyos perjuicios fija el demandante un valor limitado de $1,000."

La demandada alegó que la demanda no aducía hechos su-ficientes para determinar una causa de acción y, oídas ambas partes, la corte desestimó la alegación y concedió a la deman-dada tres días para contestar la demanda.

La contestación es como sigue:

"La demandada, representada por su Abogado Henry F. Hord, contesta a la demanda exhibida a su contra y niega los hechos con-signados en los hechos 1, 2, 3 y 4 de la demanda, tal como allí se alegan.

"Como defensa especial alega la demandada, que si algunas le-siones recibió el demandante, las recibió por razón de su propia culpa y negligencia y que la demandada no fué culpable de culpa ni negli-gencia con referencia al demandante y que la culpa y negligencia de éste fué la causa próxima de haber él recibido tales lesiones, si es que las recibió.

"Suplica, pues, la demandada que se le absuelva de la demanda con las costas al demandante."

La vista del pleito se celebró el 18 de febrero de 1910. Ambas partes hicieron sus alegaciones, practicaron sus prue-bas, e informaron oralmente por medio de sus abogados. Y la Corte de Distrito de San Juan, el mismo día 18 de febrero de 1910, dictó sentencia declarando que los hechos y la ley estaban en favor del demandante y en contra de la demandada y ordenando y decretando que el primero obtuviera de la se-gunda la suma de dos mil dollars en concepto de daños y per-juicios y las costas y gastos que se justificaren.

Apelada dicha sentencia para ante este Tribunal Supremo, la demandada y apelante San Juan Light and Transit Co., alegó, como fundamentos del recurso, los siguientes:

"1. Que de los hechos probados resultó que el demandante recibió las lesiones de que se queja por razón de su propia culpa y negligencia y no por la de la demandada o sus agentes.

"2. Que aún en el caso de tener la obligación la demandada de reparar los daños recibidos por el demandante, él no ha probado que haya gastado un solo centavo ni sufrido un centavo de perjuicios materiales por razón de las lesiones recibidas por él. ·

· "3. Que la corte al fallar que la demandada debería pagar al demandante dos mil pesos en concepto de daños, se apartó del principio legal que determina la única obligación que en tal caso pudiera pesar sobre la demandada, es decir: la obligación de *reparar el daño sufrido* y no la de gratificar al demandante una suma que ni fué objeto de prueba, ni tiene fundamento legal.'' (Código Civil, art. 1803.)

Con respecto al primero de dichos fundamentos, diremos que la prueba practicada fué contradictoria y se apreció por la corte de distrito, según se desprende de la sentencia apelada, como demostrativa de que las lesiones sufridas por el demandante lo fueron a consecuencia de la negligencia de la demandada y no por su propia culpa o negligencia.

Siendo esto así y no habiéndose demostrado que la corte sentenciadora actuara movida por pasión, prejuicio, o parcialidad, ni que cometiera ningún error manifiesto, debemos aceptar su apreciación como la justa y procedente, de conformidad con lo que hemos resuelto en repetidos casos, tanto más cuanto que hemos examinado cuidadosamente dicha prueba y, apreciando su resultado a virtud de nuestro examen, llegamos a la misma conclusión.

Los otros dos fundamentos del recurso los estudiaremos conjuntamente, pues en verdad ellos presentan una sola cuestión, esto es, la de que no habiéndose presentado por el demandante prueba alguna de la cuantía de los perjuicios sufridos, no cabe dictar sentencia en su favor.

La apelante cita en su apoyo lo dispuesto en el artículo 1803 del Código Civil revisado y la jurisprudencia establecida por el Tribunal Supremo de España en sus sentencias de

9 de noviembre 1886, 7 abril 1890, 26 noviembre 1895, 7 marzo
1896, 3 julio 1897 y 30 septiembre 1898.

El artículo 1803 del Código Civil revisado, dice así:

"El que por acción u omisión causa daño a otro, interviniendo
culpa o negligencia, está obligado a reparar el daño causado."

El principio de derecho reconocido en dicho artículo, no
es nuevo. En el derecho romano, la ley Aquilia estableció,
que estaba obligado a indemnizar todo aquel que cometiere un
daño por culpa o imprudencia, especificando el grado de esta
responsabilidad en multitud de casos y de circunstancias. Tal
doctrina fué trasladada más o menos íntegramente a las leyes
del título 5°. de la Partida 7ª. las cuales constituían el derecho
civil positivo español hasta la publicación del Código Civil.
En los artículos 18, 19, 29 y 21 del Código Penal español, se
determinaba la responsabilidad civil como consecuencia de
la penal. (12 Manresa, Com. al C. C.; 598.)

El Código Civil español a que nos hemos referido y que
fué puesto en vigor en Puerto Rico por Real Decreto de 31
de julio de 1889, reprodujo el sentido general del antiguo de-
recho, si bien, concordando sus preceptos con las teorías mo-
dernas, impuso las obligaciones derivadas de la culpa y negli-
gencia, no sólo al causante del daño, sino a veces a una ter-
cera persona que deba responder por él, por estar ligado a
éste por vínculos tales que le hagan responsable de sus actos.
El artículo 1902 de dicho Código, es exactamente igual al
1803 del Código Civil revisado.

La jurisprudencia del Tribunal Supremo de España sobre
esta materia pudiera resumirse diciendo que establece que
para que se origine la obligación impuesta en el artículo 1902
del Código Civil, es necesario la concurrencia de dos requi-
sitos distintos, a saber: 1°. que exista un daño o perjuicio no
procedente de actos u omisiones propios del perjudicado, y
cuya existencia se acredite debidamente por el que reclama
su reparación; y 2°. que dicho daño o perjuicio haya sido cau-

sado por culpa o negligencia 'de una persona distinta de la que lo sufre. (12 Manresa, Com. al C. C., 604.)

Con respecto a la apreciación por parte del tribunal del montante de los daños y perjuicios, citaremos una de las sentencias del Tribunal Supremo de España que establece un claro precedente de la doctrina que sostenemos en esta opinión. Eulogio Santa María falleció en Madrid en el año de 1891 a consecuencia de haberse caído desde el muro de fachada del frontón titulado Jai-Alai, al subirse en él para colocar unos banderines según era costumbre al empezar los partidos de pelota. Se investigaron los hechos por la vía criminal y se sobreseyó la causa que se formara al efecto, y entonces la viuda del finado, por sí y en representación de su hija menor Teodora, interpuso demanda civil ante el juzgado correspondiente, alegando que "la causa de la desgracia radicaba en la culpa y omisión de los dueños del juego de pelota por no reunir, como sabían y veían, el sitio donde se colocaban los banderines, ni parte del camino que era preciso recorrer al efecto, condiciones ningunas de seguridad"; que había dejado al morir dos hijos, uno llamado Anastasio, de 14 años, habido en su primer matrimonio, y otra llamada Teodora, de 3 años, habida en su segundo matrimonio con la demandante; que los perjuicios irrogados de que debían responder los demandados eran de dos clases; unos que podían calificarse de afección y otros causados por la falta del modesto jornal que capitalizado al 5% y sumado a la cifra exigible por el concepto anterior, ascendían a 21,425 pesetas. Los demandados alegaron que la muerte del esposo de la demandante no se podía imputar a culpa, omisión o negligencia de su parte, etc., y pidieron que se desestimara la demanda. Celebrada la vista, el juzgado dictó sentencia condenando a los demandados a pagar la suma de *cinco mil pesetas a los herederos del finado*, como indemnización de la muerte de éste. Apelada dicha sentencia por la demandante, se adhirieron al recurso los demandados, y al resolverlo la Audencia del territorio condenó a los demandados a pagar *a la demandante por sí y*

*en representación de su hija Teodora la suma de 5,000 pesetas*
como indemnización de la muerte del finado, confirmando *en
tales términos* la apelada, y reservando al otro hijo del mismo,
que no fué parte en este pleito, el derecho que le asista para
pedir también la indemnización.    Los demandados interpu-
sieron entonces recurso de casación para ante el Supremo, ale-
gando que se habían infringido diferentes leyes y entre otros
particulares que la sentencia no expresaba en cuanto apre-
ciaba la corte la vida de Santa María, ni si concedía a los de-
mandantes algo por precio de afección o por vía de perjuicio,
ni el criterio que había tenido para fijar la cifra de 5,000
pesetas.

El Supremo de España confirmó la apelada por sentencia
publicada el 14 de diciembre de 1894, cuyos fundamentos co-
piados a la letra, dicen así:

"*Considerando:* que sobre la base de estimar la Sala en virtud
de las pruebas, que la muerte desgraciada de Eulogio Santa María
ocurrió por la omisión por parte de los recurrentes, dueños y empre-
sarios del frontón llamado Jai Alai, de las precauciones oportunas
para evitar los peligros que ofrecía a colocar y retirar los gallardetes
como lo venía haciendo aquél con su conocimiento y aquiescencia y
en su provecho, aplica rectamente los artículos 1093, 1902 y 1903,
y no infringe los 1101, 1103 y 1104 del Código Civil, porque, con
arreglo al primero, las obligaciones que se deriven de actos u omisiones
en que intervenga culpa o negligencia, no penadas por la ley, están
sometidas a las disposiciones de dichos artículos 1902 y 1903, y según
éstos, la indemnización del daño procede siempre que el acto u omisión
hayan sido la causa del daño y no se haya empleado toda la diligencia
de un buen padre de familia, tanto cuanto el acto u omisión son propios
como cuando son de personas por quienes se deba responder, y porque
las disposiciones de los artículos 1101, 1103 y 1104 son de carácter
general y aplicables a todo género de obligaciones y no ofrecen con-
tradicción con las especiales de los artículos 1902 y 1903:

"*Considerando:* que la indemnización correspondiente al daño
causado por un acto ú omisión culpables, que no constituyen delito,
debe declararse como todas en cada pleito en relación con el perjui
cio particular de las personas que reclaman, y que habiéndolo hecho
así la sentencia solamente respecto de Doña Juana Alonso Celada y

de su hija, únicas demandantes, fijando la cantidad a ellas debida, no infringe el citado artículo 1902 del Código, ni menos el 360 de la Ley de Enjuiciamiento:

"*Considerando:* que la cuantía de la indemnización otorgada descansa en la prueba practicada y en los hechos reconocidos por ambas partes en los escritos fundamentales del juicio, y por lo tanto, que no existe la infracción del artículo 1214 alegada en el concepto de carecer de prueba la demanda."

Tales fueron las leyes y jurisprudencia vigentes en Puerto Rico hasta el año de 1902 en que se derogaron los Códigos Civil y Penal y la Ley de Enjuiciamiento Criminal decretados por la Monarquía Española.

En tal año comenzaron a regir en esta Isla el Código Civil revisado y los Códigos Penal y de Enjuiciamiento Criminal, prescribiéndose en estos últimos todo lo relativo a los delitos y a sus penas y al modo de perseguirlos y de castigarlos y omitiéndose todo lo referente al ejercicio de las acciones civiles derivadas de los actos delictivos.

"En nuestro estado de derecho la acción penal y la civil evinientes de un delito, son completamente independientes y nunca pueden ejercitarse conjuntamente. Sólo el Fiscal puede ejercitar la acción penal y el ejercicio de la acción civil correspondiente queda reservado a la parte interesada, en el juicio que proceda." (*Zalduondo* v. *Sánchez,* decidido el 20 de abril de 1909.)

Si bien el artículo 1803 del Código civil revisado es igual al 1902 del Código Civil español, a virtud del cambio político operado en esta Isla, y a consecuencia de la implantación del nuevo sistema penal, sus preceptos tuvieron y tienen un campo de aplicación más amplio y sirven de base tanto al ejercicio de las acciones civiles provinientes de culpa y negligencia cuasi delictivas, como al ejercicio de las que se originan de culpa y negligencia delictivas.

La palabra castellana "daño" se tradujo por la inglesa "*damage*," y su significación debe fijarse interpretándola en armonía con el cambio fundamental operado en nuestras ins-

tituciones, tanto más cuanto que dicha significación no es contraria a la establecida por la jurisprudencia antigua, sino más amplia y liberal, más justa y equitativa.

Se entiende por *"damage,"* daño, palabra derivada de la latina *"damnum,"* "el perjuicio causado por una persona a otra, o a su propiedad, bien sea con el propósito de ocasionarle daño, ya por motivo de negligencia o descuido, o por accidente inevitable."

La voz *"damage,"* daños y perjuicios, expresa "la indemnización recobrable por uno que ha sufrido un perjuicio en su persona, en su propiedad, o en sus derechos derivados de sus relaciones con otras personas, por virtud del acto o falta de otra persona"; y también: "la suma reclamada como tal indemnización por el demandante en su demanda, o el perjuicio o daño por el cual se reclama la indemnización."

1 Bouvier's Law Dictionary, 491.

Veamos ahora lo que es necesario alegar y probar en esta clase de casos.

"En acciones personales y mixtas (mas no en acciones penales, por razones obvias,) la demanda debe alegar, en conclusión, que el daño es en perjuicio del demandante, y debe especificar el montante de los daños y perjuicios; Com. Dig. Pleader (c, 84); 10. 116 b.

\*          \*          \*          \*          \*          \*          \*

"Para constituir un derecho a recobrar daños y perjuicios, la parte que reclame dichos daños y perjuicios tiene que haber sufrido pérdidas; la parte a quien se le reclaman debe ser susceptible de culpa; las pérdidas deben ser la consecuencia natural y próxima del acto culpable.

"No existe derecho a daños y perjuicios, propiamente denominados, cuando no existen pérdidas. La cantidad impuesta como multa al culpable, sencillamente como castigo por su culpa, independientemente de cualesquiera pérdidas por ella causadas, es una "multa" o "penalidad," más bien que daños y perjuicios. Los daños y perjuicios se fundan en

el concepto de pérdidas que hay que resarcir, de un daño que hay que reparar; 11 Johns, 136; 2 Tex., 460; 11 Pic., 527; 15 Ohio, 726; 3 Sumn., 192; 4 Mass., 115; 91 Pa., 302; 104 Mass., 353; 16 Q. B. D., 613; See 142 N. Y., 391; Hale Dam., 3. Estas pérdidas, sin embargo, no tienen necesidad siempre de ser precisas y definidas, susceptibles de una descripción exacta o de ser computadas en pesos y centavos. Pérdidas suficientes para sostener una acción pueden desprenderse de la mera naturaleza del caso mismo. La ley en muchos casos presume pérdidas cuando se prueba un daño intencionado (*wilful wrong*); y así también se conceden daños y perjuicios por sentimientos ultrajados, dolor corporal (físico), dolor moral, daño a la reputación, y por otros sufrimientos que sería imposible sujetar a una prueba y a un cómputo exactos, en cuanto al montante de las pérdidas sufridas; 2 Day, 250; 3 H. & M. H., 510; 5 Ired., 545; 3 Humphr., 140; 15 Conn., 267; 8 B. Monr., 432; 94 Mich., 119; 112 N. C., 323; 39 Ill., App., 495; 82 Tex., 33. La regla no es que las pérdidas deban probarse por la evidencia, sino que deben desprenderse de la evidencia o aparecer por presunción, fundándose en la naturaleza del caso.''

1 Bouvier's Law Dic., 492.

Esta misma Corte Suprema en el ya citado caso de *Zalduondo* v. *Sánchez,* por medio del Juez Asociado, Sr. Wolf, se expresó en los siguientes términos: ''La corte inferior en vista de las declaraciones de los testigos pudo inferir que el demandante estuvo sin conocimiento por unos cinco días y enfermo veinte o veinte y cinco días; que sufrió heridas profundas cuyas cicatrices podían notarse todavía en la época del juicio (pues fueron reconocidas por el Dr. Goenaga); que el demandado sufre zumbidos en los oídos así como también pérdida de su memoria y otros síntomas, y está amenazado de contraer cualquiera forma de locura. De qué modo, hasta cuándo, o en qué fecha pueden los actos del apelante afectar al trabajo o a la vida del demandante, es imposible predecirlo. No podría determinarse con precisión, pero puede la corte

determinarlo dentro de su criterio. Nada se dice en las declaraciones con referencia a los sufrimientos mentales que haya tenido el demandante, lo que es asimismo un reconocido elemento en los daños y perjuicios en todos los pleitos de esta clase. Así lo ha reconocido la Corte Suprema de los Estados Unidos en el caso de *McIntyre* v. *Giblin,* 131 U. S., CLXXIV.

"Sin resolver la cuestión de si los daños punitivos o ejemplares son recuperables, creemos que la corte inferior no se extralimitó en la apreciación de los daños razonables sufridos y que pudiera sufrir el demandante, al fijarlos en la suma de mil dollars y debe confirmarse la sentencia dictada por dicha corte."

Aplicando los anteriores principios y los contenidos en el artículo 1804 del Código Civil revisado, al caso concreto que resolvemos, encontramos que en la demanda se alega que el demandante sufrió daños y perjuicios, que aprecia en seis mil pesos, y que la causa inmediata y natural de dichos daños y perjuicios fué el acto negligente de uno de los empleados de la demandada que actuaba en su servicio y con ocasión de sus funciones.

La prueba practicada no demuestra que el demandante dejara de ganar a consecuencia de las lesiones recibidas una suma determinada de dinero, o que tuviera que pagar al médico que lo asistiera otra determinada suma, etc., pero sí demuestra que el demandante, hombre de 51 años de edad que trabajaba en la agricultura y llevaba y traía las cosechas y las vendía y vivía de su trabajo y sostenía a su familia, al bajar de uno de los carros eléctricos de la demandada, en la parada 7½ de la línea de San Juan a Río Piedras, cayó al suelo, por haber el motorista hecho caminar el carro en aquel momento sin la debida prudencia y circunspección, y sufrió un fuerte golpe que le privó del conocimiento por algunos instantes, le fracturó el maxilar inferior y le ocasionó rasguños en las piernas y otras partes del cuerpo, que permaneció en el hospital curándose de las heridas un mes más o menos, y que

examinado en el acto del juicio, o sea un año y cinco meses después de la caída, presentaba en el lado derecho de la cara y como consecuencia de la fractura, "una contracción que significa una parálisis," y que podía "hablar pero masticar muy difícilmente, y con dificultad abrir y cerrar la boca." No resulta de la evidencia que el demandante haya quedado impedido de trabajar, pero sí que se hallaba, en la época en que se practicaron las pruebas, padeciendo de una enfermedad nerviosa a consecuencia de la caída, según opinó el Dr. Stahl, uno de los peritos que declaró en el juicio.

Siendo esto así, de acuerdo con la ley y la jurisprudencia, procedía que el juez apreciara por sí mismo los perjuicios y determinara el montante de la indemnización que la demandada debía pagar al demandante. Y al hacerlo así, la corte no cometió los errores que le atribuye la parte apelante.

No se trata en el presente caso de daños punitivos o ejemplares, sino de una compensación por daños y perjuicios sufridos. Para acordar tal compensación, no es necesario que se pruebe por el demandante la pérdida sufrida en pesos y centavos, sino que bastará que, en casos de esta naturaleza, se pruebe que se sufrió por el demandante, ocasionado por la culpa o negligencia de la demandada y no por su culpa o negligencia, un daño efectivo, consistente en dolores físicos, pérdida de trabajo, reclusión en un hospital, sufrimientos mentales, etc.

La indemnización en este caso se fijó por la corte inferior en dos mil pesos, y aún cuando tal vez podría haberse apreciado en menos cantidad, no la encontramos immoderadamente inadecuada, y siendo esto así no debemos alterarla.

"Aun en aquella clase numerosa de casos en que no existe medida exacta de los daños y perjuicios, sino que se deja a la consideración del jurado, el tribunal tiene facultad de revisar el veredicto, y revocarlo si los daños y perjuicios concedidos son demasiado excesivos o inmoderadamente inadecuados. La regla es, sin embargo, que no se revocará el veredicto por daños y perjuicios excesivos á menos que el

montante sea tan subido que lleve a la convicción de la corte, que el jurado ha sido inducido a error por pasión, prejuicio, ignorancia, o parcialidad; Field, Dam., 683; 19 Barb., 461; 9 Cush., 228; 16 B. Monr., 577; 22 Conn., 74; 27 Miss., 68; 10 Ga., 37; 6 Rich., 419; 1 Cal., 33, 363; 11 Gratt., 697; 2 Misc. Rep., 303; 69 Hun, 346; 52 Fed. Rep., 87; 74 Ind., 520; 8 id., 165; 76 N. Y., 594; 85 Tenn., 400.

1 Bouvier's Law Dic., 494.

Resumiendo los principios fundamentales envueltos en este caso, diremos, que para que se puedan recobrar daños y perjuicios basándose en las prescripciones del artículo 1803 del Código Civil revisado, es necesario:

1°. Que se alegue y pruebe por el demandante la existencia de un daño real y positivo que le ha ocasionado pérdidas, en su persona, en sus bienes, o en sus derechos derivados de sus relaciones con otras personas.

2°. Que se alegue y pruebe que tal daño es la consecuencia inmediata y natural del acto culpable o negligente del demandado y no de la propia culpa o negligencia del demandante, y

3°. Que el demandante especifique en su demanda con la mayor claridad que sea posible, en qué consisten las pérdidas por él sufridas y fije detalladamente su compensación, y cuando por la naturaleza del caso no pudieren detallarse en pesos y centavos las pérdidas, se fije una cantidad, estimada como la justa compensación.

Y además:

1°. Que la corte es la llamada a apreciar las alegaciones y las pruebas y a fijar el montante de la indemnización que deba pagar el demandado, teniendo siempre en cuenta que en estos casos no se trata de imponer un castigo al demandado, sino de obligarlo a compensar con cierta justa suma de dinero, los daños y perjuicios que por su culpa o negligencia ocasionara al demandante, y

2°. Que esta Corte Suprema tiene poder para reducir el montante de la indemnización concedida por la corte inferior,

pero no lo ejercitará a menos que dicha indemnización sea demasiado excesiva o inmoderadamente inadecuada.

El recurso debe declararse sin lugar y confirmarse la sentencia apelada.

*Confirmada.*