El Juez Asociado Sr. Marrero no intervino.

SERAFÍN RODRÍGUEZ OCASIO, demandante y apelado, *v.* EL PUEBLO DE PUERTO RICO, demandado y apelante.

Número 10922.

*Sometido:* 7 de julio de 1953. *Resuelto:* 25 de septiembre de 1953.

402

*Hon. Secretario de Justicia José Trías Monge (J. B. Fernández Badillo, Secretario de Justicia Interino,* en el alegato) y *A. Torres Braschi, Procurador Auxiliar,* abogados del apelante; *Rafael Hernández Matos,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Se trata en este caso de una reclamación de daños y perjuicios interpuesta por Serafín Rodríguez Ocasio contra El Pueblo de Puerto Rico, hoy Estado Libre Asociado de Puerto Rico, alegándose que un policía le disparó ilegalmente varios tiros al demandante, hiriéndolo en ambos muslos. La sala de Ponce del Tribunal Superior dictó sentencia declarando con lugar la demanda y condenando al demandado a pagar al demandante la suma de $12,000 en concepto de daños y perjuicios. El Estado Libre Asociado ha apelado para ante este Tribunal y ha señalado varios errores.

■ El primer error señalado lee así:

"1. Erró el tribunal inferior al declarar sin lugar la Moción de Desestimación y al resolver que a través de la Ley núm. 412 de 11 de mayo de 1951 el Estado Libre Asociado de Puerto Rico había asumido responsabilidad por los daños sufridos por el demandante-apelado debido a la alegada negligencia del Policía Insular Francisco A. García."

El artículo 1802 de nuestro Código Civil dispone que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. El artículo 1803 dispone, en parte, lo siguiente:

"Artículo 1803. La obligación que impone el artículo anterior es exigible, no sólo por los actos y omisiones propios, sino por los de aquellas personas de quienes se debe responder.

". . . . . . . .

. . . . . . . .

"El Pueblo de Puerto Rico es responsable en este concepto cuando obra por mediación de un agente especial; pero no cuando el daño hubiere sido causado por el funcionario a quien propiamente corresponda la gestión practicada, en cuyo caso será aplicable lo dispuesto en el artículo anterior".

La disposición anteriormente citada, en tanto exime de responsabilidad al hoy Estado Libre Asociado de Puerto Rico al no actuar a través de un agente especial, no es aplicable al caso de autos, en virtud de lo dispuesto en la Ley núm.

412 de 11 de mayo de 1951 ((1) pág. 1097), que gobierna y se refiere específicamente a la situación aquí envuelta, y que dispone lo siguiente: .

"Sección 1. Se autoriza por la presente a Serafín Rodríguez Ocasio residente en Coamo, Puerto Rico, a demandar a El Pueblo de Puerto Rico por alegados daños y perjuicios sufridos en accidente ocurrido en Coamo, Puerto Rico, mientras era perseguido el día 6 de mayo de 1941 por el policía insular Francisco A. García.

· "Sección 2. Se releva a Serafín Rodríguez Ocasio de la prestación de fianza para formular dicha demanda; *Dispensándosele además* lo relativo a la prescripción no debiéndose computar el tiempo transcurrido *y quedando además autorizado a formular dicha demanda independiente del hecho de que El Pueblo de Puerto Rico haya o no actuado a través de un agente especial al ocurrir el referido accidente.*" (Bastardillas nuestras.)

Alega el apelante que aunque esta última ley autoriza una reclamación independientemente del hecho de que El Pueblo de Puerto Rico haya actuado o no a través de un agente especial, esa ley no exceptúa específicamente este caso de lo provisto en el artículo 1803, al efecto de que El Pueblo de Puerto Rico no es responsable "cuando el daño hubiese sido causado por el funcionario a quien propiamente corresponda la gestión practicada," en cuyo caso sólo el funcionario sería responsable personalmente. Pero al mencionar el artículo 1803 al "funcionario a quien propiamente corresponda la gestión practicada," se refiere al funcionario que no sea un agente especial. La Ley 412 de 11 de mayo de 1951 elimina el requisito, en cuanto al caso de autos, de que el policía en cuestión haya sido un agente especial, y, por lo tanto, en cuanto a la responsabilidad del Estado Libre Asociado, elimina el obstáculo que el policía sea un funcionario a quien propiamente corresponda la gestión practicada. La Ley 412 de 1951 sirve de excepción legislativa al inciso del artículo 1803 que hemos transcrito. Su efecto es el de eliminar la significación de la clase o categoría de agencia

envuelta en este caso y el de hacer aplicables a este litigio los principios generales de agencia o mandato, tal como si el Estado Libre Asociado de Puerto Rico fuese un patrono privado, responsable por las actuaciones de sus agentes dentro de los límites, contornos y fronteras de su mandato o incumbencia.

No son aplicables al de autos los casos de *Campis* v. *Pueblo*, 67 D.P.R. 393; *Acevedo* v. *Pueblo*, 69 D.P.R. 434 y *M. Grau e Hijos* v. *Pueblo*, 51 D.P.R. 13, en los cuales se resolvió que las leyes especiales envueltas en esos casos no autorizaban la presentación de reclamaciones contra El Pueblo de Puerto Rico, ya que en esas leyes no se estableció salvedad alguna en cuanto a la responsabilidad de El Pueblo, aun si no hubiese actuado a través de un agente especial. Esa salvedad quedó establecida específicamente en la Ley 412 de 1951, base de la reclamación en el caso de autos.

 El segundo y el tercer error señalados por el apelante son los siguientes:

"2. Erró el tribunal inferior al concluir, como cuestión de derecho, que el policía Francisco A. García al usar una forma violenta, injustificada e innecesaria para realizar el arresto del demandante-apelado, actuó en todo momento en cumplimiento de las órdenes específicas recibidas de su jefe inmediato, dentro del radio de sus atribuciones en la ejecución de las disposiciones de la Ley de Bebidas y en ocasión de su empleo y servicio, y cometió error, asimismo, al resolver que el demandado-apelante es responsable de la acción torticera de dicho policía y de compensar todos los daños y perjuicios que le causó al demandante-apelado. (Conclusiones de Derecho, párrafo 3.)

"3. Erró el tribunal inferior al concluir como cuestión de hecho, que el demandante-apelado no opuso resistencia o violencia contra la autoridad del policía Francisco A. García y que en ningún momento observó conducta alguna contributiva (sic) de negligencia contributoria o que obligara a provocar dicho agente a herirlo para practicar su arresto. (Conclusiones de hecho, párrafo 10.)"

Esencialmente, bajo el tercer error señalado el apelante, Estado Libre Asociado de Puerto Rico, alega que el tribu-

nal a quo erró en la apreciación de la prueba, y, con respecto al segundo error señalado, alega que aún asumiendo que sea correcta tal apreciación y sean válidas las conclusiones sobre los hechos formuladas por el tribunal sentenciador, éste incurrió en error de derecho al resolver que el Estado Libre Asociado era y es responsable al demandante ya que, según el apelante, tales conclusiones sobre los hechos demuestran que el policía Francisco A. García se excedió de los límites de sus atribuciones y de su agencia como funcionario o empleado del Estado Libre Asociado al dispararle al demandante.

Las conclusiones sobre los hechos formuladas por el tribunal apelado fueron, en parte, las siguientes:

"1. En 6 de mayo de 1941, Francisco A. García y Francisco Cruz Pagán eran miembros de la Policía Insular prestando servicios como tales en todo el término municipal de Coamo, Puerto Rico, bajo las órdenes de su jefe inmediato Luis A. Ramos.

"2. Para ese día su jefe *les encomendó la misión especial de perseguir y arrestar a Serafín Rodríguez Ocasio,* vecino del barrio Santa Catalina de Coamo, quien, según confidencias recibidas por la policía, estaba en ese barrio dedicándose a violar la Ley de Bebidas, operando un alambique clandestino.

"3. En cumplimiento de esas órdenes superiores y específicas, Francisco A. García y su compañero, temprano en la mañana del día 6 de mayo de 1941, se dirigieron, vestidos de paisanos, al barrio Santa Catalina y, al llegar al lugar conocido por los Culantros, divisaron una columna de humo que ascendía de entre una arboleda que cubría una rehoya; se dirigieron hacia ésta y allí sorprendieron a Serafín Rodríguez Ocasio atisando un alambique, al verlos éste, para que no lo arrestaran, echó a correr y, en ese momento, mientras huía perseguido por Francisco A. García, este policía le hizo dos disparos con su revólver, atravesándole ambos muslos, cayendo al suelo el perseguido Rodríguez Ocasio, quien fué llevado por ambos policías, para ser curado, a la Clínica del Dr. Talavera en Coamo.

"4. Desde el 6 de mayo de 1941 hasta julio 30 del mismo año estuvo Serafín Rodríguez Ocasio recluído, recibiendo asistencia médica, en la Clínica del Dr. Talavera en Coamo; allí

fué sometido a un tratamiento de por sí doloroso; en el muslo izquierdo el impacto de una de las balas le produjo una fractura del tercio medio del fémur, con desplazamientos muy marcados de ambos fragmentos; se le hizo una reducción bajo anestesia y se mantuvo en posición correcta por mucho tiempo con tracción y enyesado; durante este tiempo no hubo buena unión de la fractura deslizándose el fragmento inferior de su posición y produciendo un acortamiento de la pierna. La otra bala lesionó el muslo derecho, sin ocasionar fractura, quedando metida en dicho muslo. Los orificios de entrada de ambas balas, fué por la parte posterior de cada muslo.

"5. A fines de julio de 1941 fué trasladado el herido al Hospital Municipal de Coamo, donde estuvo recibiendo tratamiento, bajo la dirección médica del Dr. Talavera, director del hospital, hasta el 11 de febrero de 1942, en que fué llevado al Hospital de Distrito de Ponce, en donde estuvo hasta el 2 de mayo siguiente, siendo allí sometido a varias operaciones quirúrgicas por el Dr. Serra, quien le abrió el hueso del muslo izquierdo, le puso una placa de "vitalium", con tornillos. De mayo 2 de 1942 a enero 29 de 1943 estuvo Serafín recluído en casa de una hermana en el Barrio Santa Catalina; en esta última fecha ingresó de nuevo en el Hospital de Distrito de Ponce, donde otra vez lo trató el Dr. Serra, pero sin lograrse unión en el fémur izquierdo; en esta segunda ocasión estuvo en el Hospital de Distrito hasta el 5 de abril de 1943, fecha en que se volvió de nuevo al hogar de su hermana y en donde estuvo recluído hasta junio de 1949, en que ingresó por último en el Hospital San Lucas de Ponce, para recibir tratamiento en su pierna izquierda por espacio de tres semanas, después de las cuales se fué a residir con dicha hermana.

"6. No obstante los esfuerzos de los médicos que lo asistieron, su rodilla izquierda quedó anquilosada, fija permanentemente, produciéndose una pseudo-artosis o articulación artificial; su tobillo izquierdo también se anquilosó; se le produjo un acortamiento de unas tres pulgadas en su pierna izquierda. Desde el 6 de mayo de 1941 el demandante ha sido, y seguirá siendo durante toda su vida natural, una persona inútil para trabajos que requieran el uso de sus piernas; ha sufrido largos y torturantes tratamientos, angustias mentales, tormentos físicos y espirituales. En mayo 6 de 1941 era hombre joven, fuerte y saludable, dedicado a faenas agrícolas y tenía a su cargo varios familiares que dependían de lo que él ganaba.

"· · · · · · ·

"9. En 16 de junio de 1942 el Fiscal de Distrito formuló acusación por mutilación contra el policía Francisco A. García, imputándole haber hecho aquellos dos disparos a Serafín Rodríguez Ocasio y haberle inutilizado permanentemente su pierna izquierda. Celebrado el juicio por jurado éste lo condenó por el delito de mutilación, sentenciándosele a una pena indeterminada de un día a tres meses de presidio.

"10. El policía Francisco A. García le hizo los dos disparos a Rodríguez Ocasio en momentos en que éste, de espaldas al policía, huía para no ser arrestado, y en ocasión en que este policía insular cumplía específicas órdenes superiores de perseguir, como perseguía allí y entonces, a Rodríguez Ocasio por violación a la Ley de Bebidas, sin que éste opusiera resistencia o violencia contra su autoridad; antes de los disparos los policías no habían arrestado a Rodríguez Ocasio; practicaron su arresto después de haberlo herido. En ningún momento Serafín Rodríguez Ocasio observó conducta alguna contributiva de negligencia contributoria o que obligara a provocar al policía a herirlo para practicar su arresto o detención."

Como ya hemos indicado, bajo el tercer error señalado alega el apelante que el tribunal a quo incurrió en error al apreciar la prueba, y al no concluir que el demandante utilizó fuerza y violencia al resistir indebidamente, según el apelante, el arresto practicado por el policía García. Como ya hemos visto, el tribunal a quo concluyó que el policía García, sorprendió al demandante funcionando un alambique; y que al tratar de arrestarlo, el demandante se dió a la fuga y que, sin que el demandante ofreciera fuerza, violencia o resistencia de clase alguna, el policía le disparó mientras el demandante estaba huyendo, de espaldas al policía. Hemos estudiado detenidamente la transcripción de evidencia y hemos llegado a la conclusión de que no se ha demostrado que el tribunal de Ponce haya incurrido en error alguno al apreciar la prueba, no habiéndose cometido el tercer error señalado. Deben sostenerse sus conclusiones sobre los hechos. Pero alega el apelante que aún aceptando tales conclusiones, el policía García actuó en exceso de los límites de su agencia

y de sus poderes autorizados, no siendo responsable el Estado Libre Asociado de Puerto Rico. Veamos.

Fué criminal y estuvo injustificada la actuación del policía García al dispararle al demandante. Ejercitó fuerza y violencia excesiva. (¹) Pero el hecho en sí de que un agente haya actuado en forma delictiva y haya ejercitado fuerza o violencia excesiva e innecesaria, no exonera al patrono de responsabilidad en daños y perjuicios ni implica de por sí que el agente haya actuado fuera de los límites y atribuciones de su mandato o encomienda. *Maysonet* v. *Sucn. Arcelay*, 70 D.P.R. 167, 171 et seq; *Suárez* v. *Saavedra*, 52 D.P.R. 684, 690, 691, 60 D.P.R. 605; cf. *Díaz* v. *San Juan L. & T. Co.*, 17 D.P.R. 69. Precisamente la existencia de responsabilidad de un patrono, en cuanto al pago de daños y perjuicios en virtud de la actuación de un agente, está predicada en la culpa o negligencia del agente. Por autodefinición, la culpa o negligencia del agente, creadora de responsabilidad patronal, conlleva una actuación injustificada y contraria a las normas legales. De no haber fuerza excesiva, nunca habría responsabilidad. El exceso conlleva la culpa. Naturalmente, bajo determinadas circunstancias, la actuación delictiva, excesiva o innecesaria puede ser un factor relevante en la comprobación de si el agente ha actuado o no dentro de los límites de sus funciones. Pero no es un factor único y exclusivamente decisivo. Si el acto delictivo

---

(¹) Actúa indebidamente y ejercita fuerza o violencia excesiva un policía que, al arrestar a una persona que cometa un delito menos grave, le dispare a esa persona mientras ésta esté tratando de escapar sin oponer resistencia al policía. En el caso de *Pueblo* v. *Colón*, 65 D.P.R. 760, 767, se resuelve que cuando personas que cometen un delito menos grave en presencia de un policía no apelan a violencia alguna para impedir su arresto, sino que huyen, el policía no está justificado al disparar, aunque sea al aire, para amedrentarlas, siendo ilegal su acto al así disparar y herir a una persona.

Tratándose de un arresto por un delito menos grave, aún si el arresto es válido, un policía, no está autorizado para disparar a la persona arrestada, aún si esta última está tratando de escapar sin oponer resistencia. (*Restatement of the Law on Torts*, Vol. 1, págs. 300–305, sec. 131; Prosser *on Torts*, pág. 164; *Paramore* v. *State*, 129 S. E. 772, 776; *Wright* v. *State*, 199 Ind., 617.)

o el despliegue de violencia excesiva se lleva a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses personales del agente, el patrono sería entonces responsable. *Maysonet* v. *Sucn. Arcelay,* supra. Se podría argumentar que un acto criminal trasciende los límites de la protección legítima de los intereses patronales. Pero tal argumento se enfrenta a la realidad de que puede haber actos ilegales constitutivos de culpa o negligencia que sean creadores de responsabilidad. Si el acto delictivo tiene una conexión lógica con las funciones del agente, entonces, aún si la fuerza ejercitada es excesiva, el agente no estaría traspasando los límites de su mandato. Si tal actuación es una consecuencia relevante del ejercicio de las funciones del mandatario, este último estaría entonces protegiendo los intereses de su patrono. Un hecho ilícito no conlleva, de por sí, responsabilidad. Pero si existe un nexo lógico, de necesaria ocasión, entre la incumbencia y el hecho ilícito, esto es, si el hecho delictivo se ha hecho posible o probable, o, por lo menos, más fácil, por la naturaleza de la incumbencia, entonces habría responsabilidad patronal. (Giorgi, ob. cit., pág. 478.) Se trata entonces de una relación lógica entre las funciones del agente y su actuación inusitada, de un criterio de lógica relevancia y no de legalidad de relación pertinente con los propósitos básicos del patrono y no de magnitud de la fuerza ejercitada. Asumiendo la irresponsabilidad económica del agente, se trata, en último extremo, de quién debe sufrir, en lógica y justicia, el riesgo y la carga de los daños, la víctima o el patrono, cuando el .móvil del agente ha sido el de proteger los intereses de su patrono.

▮▮ No se nos escapa que, en este campo del derecho, las diferencias en los conceptos pueden ser sutiles y de difícil aplicación en la práctica. Se trata más bien de una cuestión de grado, cuya solución depende de distintos factores, tales como la gravedad de la actuación, los móviles del agente, la ocasión inmediata de la actuación y la naturaleza

de la conexión entre el hecho ilícito y la encomienda del agente. En cuanto a las circunstancias específicas del caso de autos, el policía García actuaba dentro de sus funciones legítimas al arrestar al demandante. Su actuación al disparar al demandante fué delictiva, inusitada y excesiva, pero tenía una conexión lógica con su encomienda. Tal encomienda fué la condición u ocasión necesaria de los disparos. Él no actuó a base de un móvil personal, sino que más bien él podía haber entendido, objetivamente, que él estaba protegiendo los intereses sociales de la comunidad, o sea, de su patrono, el Estado Libre Asociado de Puerto Rico. En vista de ello, resolvió correctamente el tribunal a quo al imponer responsabilidad al demandado.

No son aplicables al de autos los casos de *Marrero* v. *López*, 15 D.P.R. 766; *Martínez* v. *Trujillo & Mercado*, 24 D.P.R. 290 y *Torres* v. *Lema & Co.*, 36 D.P.R. 80, en que se exoneró de responsabilidad al patrono. En el de *Marrero* v. *López*, un mayordomo pidió agua a un muchacho, y al éste negarse a ello, el mayordomo le dió una bofetada y al huir el muchacho, el mayordomo le pegó un tiro. Los móviles del empleado eran personales y él no actuó en defensa de los intereses de su patrono. En el de *Martínez* v. *Trujillo & Mercado*, al estar rodeado por un grupo de trabajadores, un mayordomo trató de hacer una demostración de cómo él dispararía a un transgresor y se le escapó un tiro que mató a uno de los trabajadores. Se resolvió que el patrono no era responsable porque el hacer tal demostración no era parte de los deberes de su cargo. En el de *Torres* v. *Lema & Co.*, un policía fué a una tienda y recriminó a dos dependientes por estar vendiendo después de la hora del cierre. Otro dependiente agredió al policía con un hierro. Su actuación no guardaba relación objetiva ni contacto lógico con la protección de los intereses del patrono.

Hemos examinado los casos citados por el apelante. En la mayor parte de esos casos se resuelve que una corporación municipal no es responsable por las actuaciones de poli-

cías, ya que estos últimos desempeñan funciones guberna-
mentales y la municipalidad no actúa en forma corporativa.
La distinción entre funciones gubernamentales y corporati-
vas de una corporación municipal, por ser sutil, artificial y
conceptualista, ha sido eliminada por este Tribunal, y ya no
tiene relevancia en Puerto Rico. *Serra* v. *Autoridad de
Transporte*, 67 D.P.R. 611. En otros casos citados por el
apelante se indica que la responsabilidad gubernamental
queda excluída automáticamente por el hecho en sí de que el
policía ha ejercitado fuerza excesiva. No estamos de acuerdo
con ese criterio. El exceso no excluye la responsabilidad
sino que la define cuando está basado en el propósito de bene-
ficiar al patrono. Preferimos la tesis sentada, por ejemplo,
en los casos de *Nelson* v. *American-West African Line*, 86
F.2d 730 y *White* v. *Pacific Tel. & Tel. Co.*, 24 F. Supp.
871, 876. En el primer caso citado el Juez Learned Hand
se expresó así, en nombre del tribunal:

"Un patrono no es responsable por actos delictivos reali-
zados por un agente con la intención de promover sus pro-
pios intereses personales y no los de su patrono. Pero los
móviles pueden ser variados, complejos y confundidos unos
con los otros; los hombres pueden descargar su despecho
sobre otros y, no obstante, pueden al mismo tiempo tener
la intención de defender el negocio de su patrono. Esa
última intención es lo que constituye el criterio determi-
nante."

En el caso citado de *White*, el Jefe de la Policía de una
empresa privada hirió a un empleado, en forma excesiva,
al tratar de obtener una confesión del empleado de que él
había robado al patrono. Se resolvió que la empresa era
responsable, ya que el policía privado estaba defendiendo los
intereses de su patrono.

▮ Bajo el cuarto error señalado, el apelante alega que
la compensación de $12,000 concedida por el tribunal sen-
tenciador fué excesiva. En sus conclusiones sobre los hechos
el tribunal determinó que una bala había producido la frac-

tura del tercio medio del fémur en el muslo izquierdo del demandante, quedando luego esa pierna acortada e inutilizada, y otra bala penetró en el muslo derecho; que él sufrió varias operaciones y estuvo sometido a un doloroso tratamiento médico por un período aproximado de diez años, en que él no pudo trabajar; que su rodilla y su tobillo izquierdo han quedado anquilosados, y que "desde el 6 de mayo de 1941 el demandante ha sido, y seguirá siendo durante toda su vida natural, una persona inútil para trabajos que requieran el uso de sus piernas", y que "en mayo 6 de 1941 era hombre joven, fuerte, saludable, dedicado a faenas agrícolas y tenía a su cargo varios familiares que dependían de lo que él ganaba". Tales conclusiones están sostenidas por la prueba y, en vista de las circunstancias de este caso, no creemos que la compensación concedida haya sido excesiva.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Marrero no intervino.