Rossy García, Juez Ponente
*764 TEXTO COMPLETO DE LA SENTENCIA
El recurso instado en el caso de epígrafe interesa la revisión y revocación de una "sentencia parcial" emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (Miguel A. Montalvo Rosario, J.). Mediante ésta dicho foro, luego de convenir las partes en una estipulación de los hechos materiales y pertinentes a la causa de acción instada contra el Estado Libre Asociado de Puerto Rico (E.L.A.), así como en cuanto a la conveniencia de fraccionar el trámite para adjudicar primeramente la acción instada contra dicha parte demandada, a cuyos efectos sometieron memorandos de derecho en apoyo a sus respectivas contenciones, declaró Sin Lugar la demanda instada contra el E.L.A. y ordenó la continuación de los procedimientos en cuanto a los restantes demandados. Inconformes con dicho dictamen los demandantes interpusieron el recurso de apelación que hoy nos ocupa. En éste imputan que incidió el foro de instancia en la aplicación del derecho y al adjudicar la causa de acción instada contra el E.L.A. a base de la estipulación de hechos informada.
Encontrándonos en condición de dictaminar luego de contar con la comparecencia de la parte co-demandada recurrida, resolvemos que no se cometieron los errores imputados y que resulta procedente emitir sentencia confirmatoria del dictamen cuya revisión se interesa. Debemos no obstante aquí señalar que si bien el dictamen recurrido fue denominado "Sentencia Parcial", en el mismo no se hizo una conclusión expresa por el tribunal de instancia a los efectos de que no existe razón para posponer dictar sentencia hasta la resolución total del pleito. Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Ante esta realidad, evidente resulta que nos encontramos frente a un dictamen interlocutorio, revisable mediante el recurso de certiorari. Asociación de Propietarios v. Santa Bárbara Co., 112 D.P.R. 33, 37, 43 (1982). En consecuencia, como tal hemos acogido el recurso instado en el caso de epígrafe.
Veamos inicialmente el trasfondo fáctico y procesal que culminó con el dictamen ahora recurrido.
I
Los hechos pertinentes al aspecto de derecho que fue objeto de adjudicación por el foro de instancia son extremadamente sencillos y no están en controversia, ello luego de haber sido estipulados por las partes.
El 14 de julio de 1994 el co-demandante Gilberto Ruiz Rodríguez se encontraba en la Armería Hunter, establecimiento comercial de su propiedad, sito en la Carr. Núm. 2, jurisdicción de Isabela. En esa fecha, en o alrededor de las 4:00 p.m., se personó a dicho establecimiento el policía estatal Gerald *765 Ramos Alvarez. Este estaba franco de servicio y se encontraba en compañía de sus dos hijos menores de edad. Según fue estipulado por las partes, en dicha ocasión y mientras mostraba su arma de reglamento a otra persona que de igual forma se encontraba visitando la armería, la misma se disparó accidentalmente alcanzando al co-demandante Ruiz Rodríguez en la parte inferior del tórax. Ello le ocasionó daños de gravedad, por lo que fue trasladado de emergencia por los allí presentes al Hospital Sub-Regional de Aguadilla, donde fue intervenido quirúrgicamente. A base de tales hechos los aquí peticionarios instaron demanda contra el policía Ramos Alvarez y la sociedad de gananciales que tenía constituida con su esposa. Incluyeron también en la misma a la aquí recurrida, quien en su contestación a la demanda negó toda responsabilidad para con los demandantes.
Estipulados los hechos materiales en lo que respecta a la acción instada contra el E.L.A., según surge de la minuta correspondiente a la vista efectuada el 17 de noviembre de 1995, así como del Informe Sobre Conferencia Preliminar entre Abogados sometido por las partes el 26 de noviembre de 1996, quedó limitada la controversia en lo que a dicha parte respecta, a la determinación de si el Estado responde a los demandantes por los daños resultantes de tal alegado acto negligente del Sr. Ramos Alvarez. A tales efectos las partes sometieron memorandos de derecho en apoyo a sus respectivas contenciones, quedando así dicho extremo sometido para adjudicación, ello por estipulación de partes en ausencia de controversia alguna en cuanto a los hechos materiales atinentes a la acción instada contra el E.L.A. Fue en tales circunstancias que el foro de instancia emitió el dictamen ahora recurrido.
II
Mediante la aprobación de la Ley Núm. 104 de 29 de junio de 1995, Ley de Reclamaciones y Demandas contra el Estado, la Asamblea Legislativa autorizó la presentación de demandas contra el Estado por las actuaciones culposas o negligentes de sus empleados, funcionarios o agentes en el desempeño de sus funciones y actuando en capacidad oficial. 32 L.P.R.A. sec. 3077(a). Así, el Estado accedió a asumir la responsabilidad vicaria que en virtud del Art. 1803 del Código Civil (1930), se le imputa a un tercero por los actos de "aquellas personas de quienes se debe responder...en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular". 31 L.P.R.A. see. 5142.
Ahora bien, a tenor con la referida Ley, para que un demandante pueda prevalecer en un pleito de daños y perjuicios contra el Estado por los actos u omisiones de un empleado agente o funcionario, es necesario que pruebe la concurrencia de varios elementos. En primer lugar, y establecida la existencia de un daño, tiene que probar que la persona que le causó el daño era agente, funcionario o empleado del estado y que estaba actuando en su capacidad oficial al momento de causarle el daño. Hay que establecer "suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado, por razón del ejercicio de funciones expresas o implícitas". Sánchez Soto, et al. v. E.L.A., 128 D.P.R. _ (1991), 91 J.T.S. 52, a la pág. 8649. Segundo, es necesario que el demandante pruebe que ese agente, funcionario o empleado actuó dentro del marco de su función. Rodríguez v. Pueblo, 75 D.P.R. 401 (1953). En tercer lugar, es imperativo demostrar que la actuación del empleado fue negligente y no intencional, Art. 6, Ley Núm. 104, supra, 32 L.P.R.A. sec. 3081(d), ello según ha sido atemperado por la jurisprudencia. Por último, hay que demostrar relación causal entre la conducta culposa y el daño producido. Meléndez v. E.L.A., 81 D.P.R. 824, 828 (1960).
Cumplidos estos requisitos, y como bien se expresó en Leyva v. Aristud, 133 D.P.R. _ (1993), 93 J.T.S. 5, a la pág. 10308:

"el E.L.A. está sujeto a responsabilidad en cualquiera de los siguientes supuestos: (1) cuando el empleado, agente o funcionario causa un daño por su exclusiva culpa o negligencia, mientras desempeña sus funciones y actúa en su capacidad oficial; (2) cuando el empleado, agente o funcionario causa un daño mientras desempeña sus funciones y actúa en su capacidad oficial por una actuación preponderantemente negligente aun cuando dicha conducta tenga algunos elementos intencionales (citas omitidas); (3) cuando, a pesar de que el daño fue directamente producido por un acto enteramente intencional de los cuales no responde el Estado, hubo otros actos negligentes separados de co-causantes del daño por los cuales sí debe responder el Estado (citas omitidas); (4) cuando el Estado a través de sus agentes es negligente por omisión al incumplir con un deber impuesto por las leyes y la Constitución."

*766 De otra parte y atendiendo la situación particular del caso que nos ocupa, la Ley de la Policía de Puerto Rico vigente a la fecha de la ocurrencia del accidente antes referido, disponía que "[l]os miembros de la Policía conservarán su condición de tales en todo momento y en cualquier sitio que se encontraren dentro de la jurisdicción del Estado Libre Asociado, incluyendo cuando estén libres". 25 L.P.R.A. sec. 1018(). Como corolario de dicho mandato legislativo, el Manual sobre uso y manejo de armas de fuego (rev. de 1987), el cual regula la portación y el uso de las mismas, ordena que "[l]os miembros de la Fuerza portarán el arma de reglamento en todo momento, aun cuando estén fuera de servicio". (Cap. II, Inciso F(5).
Ahora bien, lo antes indicado no alcanza ni constituye fundamento para imponerle responsabilidad al Estado en toda situación imaginable resultante del uso negligente o culposo del arma de reglamento, como tampoco lo es el hecho de que la ley disponga que los agentes de la policía lo son las 24 horas del día. Bajo esa óptica sostener lo contrario desembocaría en una imposición de responsabilidad absoluta al Estado en circunstancias que ni el legislador ni el estatuto bajo estudio contemplan. Según ya indicado, para imponer responsabilidad vicaria al Estado se requiere, entre otros elementos, establecer que el agente, funcionario o empleado actuó dentro del marco de su función, así como la existencia de "suficiente nexo jurídico entre la actuación negligente del policía y los intereses del Estado, por razón del ejercicio de funciones expresas o implícitas". Sánchez Soto, supra. En el caso que nos ocupa los demandantes, lejos de descargar tal peso de prueba, sometieron la causa de acción instada contra el E.L.A. a base de una estipulación de hechos que conducía a un sólo curso decisional, la desestimación de la demanda en cuanto al E.L.A. Basta con señalar que el Policía Ramos se encontraba franco de servicio, en ropa de civil y acompañado de sus dos hijos menores de edad en el momento de la ocurrencia del accidente, por lo que ningún interés del Estado o gestión para beneficio de éste estaba realizando en dicho momento. De otra parte, el acto de desenfundar su arma no estuvo motivado o relacionado con percepción alguna de peligro relacionada ccrn su seguridad personal o la de las personas allí presentes. Se trató más bien de una actuación negligente, motivada por su interés personal de mostrar su arma de reglamento, en circunstancias al margen de sus funciones oficiales y donde, según indicado, no se adelantaba interés alguno del Estado. En consecuencia, ausentes los factores necesarios para imponer responsabilidad al Estado por las actuaciones culposas o negligentes de sus empleados, dictaminó con corrección el foro de instancia al desestimar la demanda instada en cuanto al E.L.A.
Finalmente, totalmente frívolo e inmeritorio resulta el señalamiento de error dirigido a cuestionar la suficiencia de la estipulación de hechos informada por las partes, ello luego de convenir éstos en la conveniencia de fraccionar el caso para adjudicar primeramente la responsabilidad del Estado, ello a base de lo alegado y expuesto en la demanda y lo estipulado tanto en el informe de Conferencia entre Abogados, como en corte abierta en ocasión de la vista efectuada el 17 de noviembre de 1995, según términos de la Minuta, a la que se hace referencia en el dictamen recurrido.
De otra parte, y en cuanto a este último extremo, debemos señalar que los recurrentes no incluyeron en el Apéndice del recurso los escritos contentivos de las estipulaciones de las partes y el acuerdo de someter la causa de acción instada contra el Estado, a los que el foro de instancia hace referencia en el dictamen recurrido. Incumplió así con lo dispuesto tanto en la Regla 54.4 de Procedimiento Civil como en la Regla 34(E) del Reglamento de este Foro, las que en lo pertinente requieren que se incluya en el Apéndice de un recurso de certiorari, copia de toda moción o escrito de cualquiera de las partes que sea relevante a los asuntos planteados. Incumplió así con su obligación de colocarnos en condición de evaluar los méritos de tal señalamiento de error. Además, tal señalamiento luego de haber recaído sentencia, en circunstancias donde ningún ofrecimiento de prueba en tiempo oportuno hizo al foro de instancia, lo desviste de todo mérito.
111
Por los fundamentos antes expuestos se expide auto de certiorari en el caso de epígrafe para dictar sentencia confirmatoria del dictamen recurrido.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
*767 ESCOLIOS 98 DTA 21
1. Véase Sentencia Parcial, Apéndice del Recurso, Anejo I, Pág. 8.
2. Véase Sentencia Parcial, así como la "relación de hechos" del alegato sometido por los demandantes ante el foro de instancia. (Apéndice Recurso, Anejos I y IV).
3. Ley Núm. 26 de 22 de agosto de 1974, 25 L.P.R.A. sec. 1001 et seq. La misma fue derogada por la Ley Núm. 53 de 1996, codificada en 25 L.P.R.A. see. 3101 etseq. (Supl. 1997).
4. Similar disposición fue recogida en la nueva Ley de la Policía de Puerto Rico de 1996, Ley Núm. 53 de 1996, la cual quedó codificada en 25 L.P.R.A. sec. 3110(c). (Supl. 1997).