El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
En abril de 2001 la demandante y peticionaria, Sra. Mariela Hernández Vélez, laboraba como contratista independiente de J & K Enterprises, Inc., una entidad dedicada a la producción de programas para Televicentro de Puerto Rico, específicamente para el programa conocido como Super Exclusivo. La producción del referido programa se llevaba a cabo con personal de J & K Enterprises, aunque utilizaban los camarógrafos y las instalaciones de Televicentro de Puerto Rico.
El 27 de abril de 2002 la señora Hernández Vélez tenía pautado entrevistar al Sr. Oscar Solo para el segmento “¿Qué es de la vida de ...?”, transmitido todos los viernes a través del programa Super Exclusivo. Para trasladarse a la residencia del mencionado artista, ubicada en el pueblo de Bayamón, la demandante utilizó un vehículo propiedad de Televicentro de Puerto Rico que fue conducido por el codemandado Moisés Vélez quien, como en otras ocasiones, la acompañó en calidad de camarógrafo de exteriores.(1)
Según las determinaciones de hecho realizadas por el foro de instancia, en el transcurso del viaje el señor Vélez expresó a la demandante que no la podía saludar en el Canal “porque los muchachos se burlaban de él”, a lo que ésta le contestó que podía saludarla si quería. Además, Vélez le hizo un señalamiento a la demandante de que estaba muy blanca y necesitaba tomar sol.
Al llegar al edificio donde residía el Sr. Oscar Solo, la demandante abordó el ascensor acompañada del artista y el señor Vélez. Este último quedó ubicado detrás de Hernández Vélez, quien sintió que el codemandado le rozó los glúteos con la cámara. El segundo incidente ocurrió al abrir el ascensor, cuando Vélez rozó nuevamente a la demandante, esta vez en la espalda. En ese momento Her *807 nández Vélez le expresó: “Déjate de la jodienda, deja la mierda y suspende que si viniste calientito hoy te jodiste” y que si era para calentarse la madre del señor Solo tenía una olla puesta.
Finalizada la entrevista, la demandante abordó nuevamente el vehículo conducido por Vélez, quien tomó una ruta distinta a la que ella conocía.(2) Posteriormente, ésta le indicó que se sentía mareada y le pidió que se dirigieran inmediatamente para el Canal. Vélez le expresó que se veía muy pálida y comenzó a realizar sonidos jadeantes con la boca y a hacer ruidos similares a los que se producen cuando se succiona algo. Además, comenzó a lamerse los labios.
Ante tal escenario, la demandante le preguntó qué le pasaba, a lo que Vélez contestó que “ella le gustaba”. En reacción a dicho comentario, Hernández Vélez le inquirió: “qu[é] carajo te pasa conmigo, llévame al Canal.” Vélez continuó realizando sonidos con la boca y le indicó que “hacía tiempo que no tenía buen sexo”. Molesta con la situación, la demandante insultó al codemandado y le cuestionó por qué estaba haciendo eso. Inmediatamente tomó su abrigo y se acercó a la ventana de la puerta que le quedaba cerca.
Más adelante, y luego de un momento de silencio, cuando la demandante miró al codemandado se percató que éste tenía su pene fuera del pantalón. La demandante comenzó a gritarle “sucio, depravado” y le exigió que la llevara al Canal. En ese momento el codemandado levantó su mano derecha, lo que hizo pensar a Hernández Vélez que éste tenía intenciones de agredirla, por lo que rápidamente reaccionó golpeándolo con su mano izquierda. Nuevamente la demandante le exigió a Vélez que no la tocara y la llevara inmediatamente al Canal. Una vez en el Canal, *808 el codemandado le expresó a Hernández Vélez que lo sucedido debía quedar entre ellos.
Enterado del incidente, el Sr. José E. Ramos, Presidente de Televicentro de Puerto Rico, refirió el asunto a la Sra. Norma Cruzado, Directora de Recursos Humanos del Canal. Esta procedió a entrevistar a ambas partes por separado. Durante su entrevista, Vélez admitió haber cometido un error y se disculpó por lo sucedido.
Finalizada la investigación administrativa, el Canal cursó una carta al codemandado advirtiéndole que la política del Canal era mantener un ambiente libre de todas formas de intimidación y hostigamiento, y que en el futuro no tolerarían este tipo de conducta.(3) Además, se le impartieron instrucciones específicas al supervisor de Vélez a los efectos de que en adelante éste no podría trabajar junto a Hernández Vélez ni junto al personal de la producción de Super Exclusivo. Del mismo modo, se ordenó que se cumpliera la directriz existente en el Canal en cuanto a que no se le proveería transportación en vehículos oficiales a ninguna persona que no fuera empleado de éste.
Así las cosas, el 6 de junio de 2001 la señora Hernández Vélez presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan,(4) una demanda por hostigamiento sexual al amparo de la Ley Núm. 17 de 22 de abril de 1988(5) y el Art. 1802 del Código Civil de Puerto Rico.(6) En ésta figuraban como demandados Televicentro de Puerto Rico y el Sr. Moisés Vélez. Posteriormente, la referida demanda fue enmendada para incluir como codemandados al Sr. Antulio Santarrosa y a J & K Enterprises y, a su vez, para incorporar una causa de acción por daños basada en *809 el Art. 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142.(7)
Varios meses más tarde, y como consecuencia de una moción de desistimiento voluntario presentada por Hernández Vélez, el tribunal de instancia dictó sentencia parcial desestimando la causa de acción presentada contra Antulio Santarrosa. La demandante también retiró la causa de acción sobre hostigamiento sexual presentada contra Moisés Vélez y Televicentro de Puerto Rico, al amparo de las disposiciones de la Ley Núm. 17, ante, y bajo el Título VII de la Ley Federal de Derechos Civiles; mantuvo, sin embargo, su reclamación de daños y perjuicios contra dichos codemandados bajo las disposiciones de los Arts. 1802 y 1803 del Código Civil de Puerto Rico, ante.
Luego de varios trámites e incidentes procesales, el 28 de octubre de 2003 el Tribunal de Primera Instancia declaró “con lugar” la reclamación de daños y perjuicios presentada contra Televicentro de Puerto Rico y su empleado Moisés Vélez, al determinar que ambos le respondían a ésta por los daños y perjuicios sufridos por ella como consecuencia de los avances sexuales del empleado. En cuanto a este último, el foro primario determinó que sus actuaciones configuraban una agresión, situación que era civilmente procesable bajo el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141.
En lo que respecta a la codemandada Televicentro de Puerto Rico, el foro de instancia entendió que fue negligente al no tomar las medidas cautelares para la prevención y erradicación del hostigamiento sexual en el empleo, a pesar de que —alegadamente— tenía conocimiento de la conducta hostigante del demandado Moisés Vélez. Al fun *810 damentar su determinación, el referido foro hizo alusión a un supuesto incidente de carácter sexual que protagonizó Vélez con una maquillista del Canal. El tribunal de instancia sostuvo que este alegado incidente con la maquillista constituía una primera violación a la política de hostigamiento sexual del Canal que debió llevar a la codemandada a “interv[enir] con medidas cautelares para prevenir otros actos de hostigamiento sexual”.
Como segundo fundamento a su determinación, el foro de instancia resolvió que en este caso aplicaba lo dispuesto en el Art. 1803 del Código Civil, ante, sobre responsabilidad vicaria del patrono. En ese sentido, expresó que el Canal respondía por los actos de Vélez por no haber tomado las medidas cautelares para la prevención y erradicación del hostigamiento sexual en el empleo. Concluyó que dicha corporación no demostró que hubiera empleado toda la diligencia de un buen padre de familia para prevenir el daño, señalando que, de haber tomado medidas encaminadas a evitar la conducta hostigante de Vélez, se hubiese liberado de responsabilidad. De esta forma le impuso a ambos codemandados una responsabilidad solidaria por los daños y perjuicios sufridos por la demandante que, según resolvió, ascienden a $50,000, más las costas del litigio.(8) El tribunal no hizo expresión alguna sobre la causa de acción sobre hostigamiento sexual al amparo de las disposiciones de la Ley Núm. 17, ante, ya que, como señaláramos, ésta fue desistida por la demandante temprano en el proceso.
Inconforme con la determinación del Tribunal de Primera Instancia, Televicentro de Puerto Rico acudió al Tribunal de Apelaciones mediante un recurso de apelación. En síntesis, alegó que incidió el foro de instancia al decretar que era responsable vicariamente de la conducta en que incurrió Vélez hacia la demandante, ya que en el presente caso no se configuran los elementos requeridos para que se *811 active dicha responsabilidad. En ese sentido, argumentó que los acercamientos de índole sexual realizados por su empleado constituyeron actos de carácter exclusivamente personal que no tienen relación alguna con algún interés o beneficio de Televicentro de Puerto Rico.
Como segundo señalamiento de error, la codemandada alegó que incidió el foro de instancia al determinar que había incurrido en negligencia al no anticipar las consecuencias probables del alegado incidente de carácter sexual en el que Vélez estuvo implicado y que involucraron a una maquinista del Canal. Sobre este particular, adujo que el incidente al que hace alusión el tribunal realmente fue un malentendido y que así lo reconoció y estableció el propio tribunal de instancia en sus determinaciones de hechos.
El foro apelativo intermedio, mediante una sentencia revocatoria, determinó, en síntesis, que: el foro de instancia había errado al determinar que Televicentro de Puerto Rico respondía vicariamente por los actos de su empleado Vélez, ya que la conducta observada por éste no formaba parte del marco de sus funciones y atribuciones, y debido a que no existía una conexión razonable y pertinente entre los actos de Vélez y los intereses o el beneficio económico de Televicentro de Puerto Rico, requisitos exigidos por el Art. 1803 del Código Civil de Puerto Rico, ante, y nuestra jurisprudencia interpretativa.(9)
Inconforme, Hernández Vélez acudió ante este Tribunal mediante un recurso de certiorari. Le imputó al Tribunal de Apelaciones haber errado al revocar la sentencia emitida por el foro de instancia en el presente caso e intervenir indebidamente con las determinaciones de hechos que hiciera el tribunal de instancia. El 20 de mayo de 2005 expedimos el recurso. Contando con la comparecencia de ambas *812 partes, y estando en condiciones de resolver, procedemos a hacerlo.
II
 En nuestra jurisdicción, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Art. 1802 del Código Civil de Puerto Rico, ante.(10) Administrador v. ANR, 163 D.P.R. 48 (2004); Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976). Como es sabido, para que exista responsabilidad bajo este precepto es necesario que ocurra un daño, una acción u omisión culposa o negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Administrador v. ANR, ante; Montalvo v. Cruz, ante; Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-473 (1997).
Refiriéndonos específicamente al asunto de las omisiones, hemos señalado que al determinar si se incurrió o no en responsabilidad civil resultante de una omisión, los tribunales deberán considerar varios factores, a saber: (i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si de haberse realizado el acto omitido se hubiera evitado el daño. Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 106 (1986).
En cuanto al primero de estos factores hemos señalado que la ocurrencia de una omisión “sólo [da] lugar a *813 una causa de acción en los casos en que exista un deber de actuar”. Elba A.B.M. v. U.P.R., ante, pág. 308. Véase J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, T. 2, Vol. 3, pág. 80. Asimismo, hemos resuelto que una omisión genera responsabilidad civil siempre que ésta constituya una “conducta antijurídica imputable”. Arroyo López v. E.L.A., 126 D.P.R. 682, 686 (1990).
A tono con lo anterior, se ha señalado que para que se incurra en negligencia, como resultado de una omisión, tiene que existir un deber de cuidado impuesto o reconocido por ley y que ocurra el quebrantamiento de ese deber. H.M. Brau Del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 173. Esto es, “si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel grado de cuidado, diligencia, vigilancia y precaución que las circunstancias le exigen”. Arroyo López v. E.L.A., ante, pág. 686.
Cónsono con esto, hemos resuelto que “ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño”. Arroyo López v. E.L.A., ante, págs. 686-687. Este deber de cuidado incluye tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Sin embargo, debe quedar claro que “la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas”. Elba A.B.M. v. U.P.R., ante, pág. 309. Lo esencial en estos casos es que se tenga el deber de prever en forma general consecuencias de determinada clase. Elba A.B.M. v. U.P.R., ante. Sobre este particular hemos sido enfáticos al expresar que sin la existencia de este “deber de cuidado mayor” no puede responsabilizarse a una persona porque no haya *814 realizado el acto de que se trate. Ramírez v. E.L.A., 140 D.P.R. 385, 394 (1996).
Por otro lado, y en lo que respecta al asunto específico de la relación causal que debe existir entre el daño causado y la alegada omisión negligente, hemos precisado que ésta existe cuando “de haberse realizado el acto omitido se hubiere evitado el daño”. Soc. Gananciales v. G. Padín Co., Inc., ante, pág. 106. En ese sentido hemos pautado que “[n]o es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general”. Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. Montalvo v. Cruz, ante, págs. 756-757.
Por otra parte, es harto conocido que en nuestro ordenamiento jurídico la obligación de reparar daños generalmente dimana de un hecho propio. Art. 1802 del Código Civil de Puerto Rico, ante. Ello no obstante, como excepción a esta norma está la figura de responsabilidad vicaria, según establecida el Art. 1803 del Código Civil de Puerto Rico, ante. Este precepto “impone responsabilidad por los actos u omisiones, culposas o negligentes, de aquellas personas por quienes se debe responder, siempre que con la culpa o negligencia de éstas concurra la del principal, la que se presume”. Brau Del Toro, op. cit, Vol. II, pág. 763. Esto dependerá de que el patrono no haya empleado toda la diligencia de un buen padre de familia para prevenir el daño. íd.
En lo que respecta específicamente a la controversia ante nos, el referido Art. 1803 del Código Civil de Puerto Rico dispone:
*815 La obligación que impone [el Artículo 1802] de este título es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los peijuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.
Como vemos, el citado precepto impone —de forma excepcional— responsabilidad al patrono por los actos u omisiones de sus empleados, siempre que éstos hayan actuado dentro del marco de sus atribuciones o funciones. González v. Compañía Agrícola, 76 D.P.R. 398, 401 (1954). Sobre este particular, hemos resuelto que el criterio determinante para establecer la responsabilidad del patrono es si al llevar a cabo su actuación, el agente tenía el propósito de servir y proteger los intereses de su patrono y no los suyos propios, y si su actuación fue incidental al cumplimiento de las actuaciones autorizadas. Esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono, y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono. Martínez v. U.S. Casualty Co., 79 D.P.R. 596, 601 (1956); González v. Compañía Agrícola, ante, pág. 401.
A tono con lo anterior, hemos resuelto que la prueba para determinar la responsabilidad del patrono respecto a los actos del empleado no es si el acto de éste ha sido voluntario e intencional, sino si actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad, o si se desvió de sus funciones y realizó un acto dañoso de carácter personal. Maysonet v. Sucn. Arcelay, 70 D.P.R. 167, 173 (1949).
*816 Sobre este particular este Tribunal ha sido enfático al señalar que “[l]a regla prevaleciente es que el patrono es responsable por los actos temerarios, voluntarios, intencionales, desenfrenados o maliciosos de su empleado, así como por sus actos imprudentes y descuidados si son realizados mientras el empleado actúa en el ejercicio de su autoridad y en el curso de su empleo o con miras al adelantamiento del negocio del patrono [,] y no con un propósito personal suyo”. Maysonet v. Sucn. Arcelay, ante, pág. 173.
En cuanto a la responsabilidad del patrono ante una conducta delictiva de su empleado, hemos resuelto que existe responsabilidad vicaria siempre que el acto delictivo se lleve a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses personales del agente. Rodríguez v. Pueblo, 75 D.P.R. 401, 409-410 (1953); Maysonet v. Sucn. Arcelay, ante. Al realizar esta determinación, los tribunales deberán analizar si la actuación de que se trata es una consecuencia relevante del ejercicio de las funciones del mandatario. Rodríguez v. Pueblo, ante.
III
Como señaláramos, en el presente caso el foro de instancia le impuso responsabilidad solidaria a la codemandada Televicentro de Puerto Rico al determinar que ésta falló en prever la conducta hostigadora de carácter sexual de su empleado, el codemandado Moisés Vélez, a pesar de que —según resolvió— éste había protagonizado un incidente previo que era conocido por el Canal. Citando el Art. 1803 del Código Civil de Puerto Rico, ante, el foro primario ex-presó, además, que la codemandada Televicentro de Puerto Rico no demostró que hubiera empleado toda la diligencia de un buen padre de familia para prevenir y evitar la conducta de su empleado. El foro apelativo intermedio revocó *817 dicha determinación, por entender que en el presente caso no se configuran los elementos requeridos para que se active dicha responsabilidad. Confirmamos; veamos por qué.
Refiriéndonos, en primer lugar, a la causa de acción instada al amparo del antes citado Art. 1803 del Código Civil de Puerto Rico, y luego de realizar un análisis responsable de los hechos que dieron lugar a la presente controversia, estamos totalmente convencidos de que en el caso de autos no se cumplen los requisitos mínimos indispensables para que se active la extensión de responsabilidad establecida en el Art. 1803 del Código Civil de Puerto Rico, ante. Esto es, la actuación del codemandado Vélez de rozar varias veces a la demandante con su cámara y mostrarle su miembro sexual mientras realizaba ruidos de tipo de sexual con su boca, definitivamente no fue realizada con el propósito de “servir y proteger los intereses del patrono” ni, mucho menos, de imprimirle efectividad al objetivo final de su empresa.
Por más que analicemos los hechos del presente caso no existe posibilidad alguna de que encontremos una conexión razonable y pertinente entre el acto despreciable, depravado y procesable del codemandado Moisés Vélez y los intereses de Televicentro de Puerto Rico. Todo lo contrario; el cuadro fáctico ante nos apunta indubitadamente a que la actuación del empleado respondía exclusivamente a motivos personales, que en nada beneficiaban el negocio del patrono ni estaban dentro de la esfera de su autoridad. Los avances sexuales en que Vélez incurrió eran constitutivos de delito público, actos por los cuales Televicentro de Puerto Rico no responde civilmente, pues lo contrario constituiría la imposición de responsabilidad absoluta a un patrono, lo cual es impermisible bajo dicho estatuto. Mártir Santiago v. Pueblo Supermarket, 88 D.P.R. 229 (1963).
Vemos, pues, que en el presente caso no existe duda alguna de que el codemandado Moisés Vélez debe responder por los actos deleznables en que incurrió el día de los hechos. Ello no obstante, el grado de depravación de que *818 fue capaz Vélez en dicho día no debe nublar nuestro entendimiento jurídico ni influenciarlo de tal manera como para responsabilizar civilmente a una parte demandada que, conforme las leyes y jurisprudencia aplicables, debe ser exonerada.
No podemos finalizar sin exponer los fundamentos que nos llevan a descartar la teoría esbozada por el foro primario a los efectos de que la codemandada Televicentro de Puerto Rico incurrió en omisión y que, por lo tanto, debe responder bajo el Art. 1802 del Código Civil de Puerto Rico, ante, al no tomar las acciones previsoras pertinentes para evitar que el codemandado Moisés Vélez incurriera en una conducta hostigadora en el empleo.
De entrada debemos puntualizar que el primer error en que incurre el foro de instancia al imponerle responsabilidad a la codemandada Televicentro de Puerto Rico bajo este fundamento radica en que, al así hacerlo, utilizó —aunque de forma solapada— los postulados de la Ley de Hostigamiento Sexual en el Empleo, Ley Núm. 17, ante, para demostrar la existencia de un deber jurídico de actuar por parte del Canal. Ello sin reparar en el hecho de que la mencionada Ley Núm. 17 no aplica a los hechos del presente caso, no sólo porque la demandante desistió de la causa de acción instada al amparo de ésta, sino también porque se le impone a Televicentro de Puerto Rico el deber de actuar en relación con una persona que no es su empleado; esto, por definición, está fuera del ámbito de esta ley.
El segundo error en que incurrió el foro de instancia con relación a esta determinación consiste en haber fundamentado su discusión en la existencia de un supuesto incidente anterior de hostigamiento sexual por parte del codemandado Vélez, en que Televicentro de Puerto Rico, alegadamente, no tomó la acción correctiva necesaria, y que, de haberlo hecho, no hubiera ocurrido el incidente con la peticionaria Hernández Vélez.
*819 De acuerdo con las determinaciones de hecho realizadas por el propio foro de instancia, este alegado incidente tuvo lugar en una ocasión en que el codemandado Vélez había acudido muy preocupado a la oficina de la señora Cruzado, Directora de Recursos Humanos de Televicentro de Puerto Rico, a relatarle que su hermano le había informado que lo iban a acusar de hostigamiento sexual. Le relató que lo acusaban de tratar de darle un beso en la boca a una maquillista empleada de Televicentro de Puerto Rico.
Según estableció claramente el propio foro de instancia en sus determinaciones de hechos, en esa ocasión el que relató lo sucedido fue el codemandado Vélez, y le indicó que había entrado al departamento de maquillaje a dar un beso como de costumbre, y que cuando fue a hacer esto, a saludar a la maquillista, había tropezado con una silla y la maquillista “pensó” que él le iba a dar un beso en la boca.
Esta versión fue corroborada por la referida maquillista. A tales efectos, en la determinación de hecho Núm. 47 el foro primario estableció lo siguiente:
La Sra. Cruzado llamó a la empleada Ruthlyn envuelta en dicho incidente y ésta le dijo que ella se “asustó y creyó que le iba a dar un beso en la boca”, (el codemandado Vélez) pero que se estaban saludando como siempre. (Enfasis nuestro.) Apéndice, pág. 190.
Como vemos, en el presente caso la maquillista nunca se querelló ante dicha empresa ni de forma informal ni formal. Esto es, nunca hubo una querella que pusiera en movimiento el procedimiento de disciplina correspondiente en estos casos. Por otro lado, creemos que la información que recibió Televicentro de Puerto Rico respecto a la ocurrencia de este incidente, la cual originalmente provino del propio Vélez, no era demostrativa de conducta impropia alguna de parte de éste.
Surge claramente de las determinaciones de hecho que esta situación fue investigada por Televicentro de Puerto Rico y que la Directora de su Departamento de Recursos *820 Humanos entrevistó a la empleada involucrada en el malentendido. Esta corroboró la versión brindada por Vélez a los efectos de que ella mal interpretó lo sucedido. Ante esta realidad fáctica —expuesta y reconocida por el foro primario— es evidente que Televicentro de Puerto Rico no tenía por qué realizar ninguna otra gestión en relación con este alegado incidente.
No obstante lo anterior, y aun asumiendo a los fines de la argumentación que el incidente con la maquillista debió haber puesto en vigor el procedimiento disciplinario establecido por Televicentro de Puerto Rico en protección de su política contra el hostigamiento sexual, todo lo que procedía era una reprimenda o una suspensión de empleo sin paga.
Asumiendo, nuevamente a los fines de la argumentación, que Televicentro de Puerto Rico hubiera emitido una reprimenda respecto a Vélez o, incluso, lo hubiera suspendido: ¿dicha acción disciplinaria hubiera evitado la ocurrencia del incidente con la demandante Hernández Vélezl La contestación en la negativa es mandatoria; su conducta criminal era totalmente imprevisible.
Vemos, pues, que a diferencia de lo resuelto por el foro de instancia, un examen objetivo, imparcial y desapasionado de los hechos del presente caso nos lleva inexorablemente a concluir que Televicentro de Puerto Rico no tenía razón de peso alguna para prever que Vélez era capaz de cometer actos como los que se le imputan haber cometido.(11) Unicamente existe, en su expediente de empleado, un incidente aislado —el de la empleada maquillista— el cual, examinado en su justa perspectiva, no es suficiente para poner sobre aviso a una empresa sobre la posible comisión de actos futuros de hostigamiento sexual *821 por parte de ese empleado; sobre todo cuando consideramos que la única información que tenía esa empresa —según las propias determinaciones del foro primario— era que la maquinista se había asustado y había creído que Vélez se proponía besarla. Si a ello le añadimos que ni antes ni después de ese incidente Vélez había sido señalado como una persona propensa a cometer actos de esa índole, realmente no se puede hablar de que Televicentro de Puerto Rico incurrió en una omisión que genera responsabilidad.
En vista de lo antes expuesto, es evidente que en el presente caso no procede imponerle responsabilidad —ni vicaria ni por omisión— a la codemandada Televicentro de Puerto Rico por los daños y perjuicios sufridos por la demandante Hernández Vélez.
IV
A la luz de los fundamentos antes expresados, procede decretar la confirmación de la sentencia emitida por el Tribunal de Apelaciones en el presente caso, revocatoria a su vez de la emitida por el Tribunal de Primera Instancia, con relación a la codemandada Televicentro de Puerto Rico.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton no interviene. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió la Jueza Asociada Señora Fiol Matta.

 Es preciso señalar que a la fecha de los hechos la señora Hernández Vélez no poseía vehículo propio ni licencia autorizada para conducir.

 De las determinaciones de hecho del tribunal de instancia surge que el señor Vélez le indicó a la demandante que “iba a aprovechar para hacer algo”. Esta le contestó que no tenía objeción, siempre que estuvieran en el Canal antes de la 1:00 P.M.

 En la referida misiva se hizo alusión a un supuesto incidente previo de hostigamiento sexual del cual la señora Cruzado había tenido conocimiento. Este asunto será discutido en detalle más adelante.

 El caso fue trasladado posteriormente al Tribunal de Primera Instancia de Bayamón.

 29 L.P.R.A. see. 155 et seq.

 31 L.P.R.A. see. 5141.

 Televicentro contestó la demanda y las posteriores demandas enmendadas, lo que también hizo el codemandado Vélez. Este último incoó, además, una reconvención por daños contra la demandante, alégando que voluntariamente ésta había practicado sexo oral con él, y reclamó daños y perjuicios por divulgar una versión falsa de los hechos. La demandante contestó la reconvención, negando lo aducido por Vélez en su reconvención.

 El foro de instancia declaró “sin lugar” la reconvención del demandado Moisés Vélez.

 El Tribunal de Apelaciones consideró innecesario entrar a discutir el segundo señalamiento de error de Televicentro de Puerto Rico relacionado con la causa de acción instada al amparo del Art. 1802 del Código Civil de Puerto Rico, ante.

 El referido artículo dispone:
“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización.” 31 L.P.R.A. see. 5141.

 Es importante puntualizar que al llegar a esta conclusión no estamos de forma alguna interviniendo con las determinaciones de hechos del tribunal de instancia. Todo lo contrario; en todo momento hemos sido enfáticos al señalar que lo expresado surge de forma íntegra de las propias determinaciones realizadas por el foro primario.